### GAINESVILLE WATER COMPANY V. CITY OF GAINESVILLE.

Decided October 23, 1909.

**1.—Practice—Trial without Jury—Admission of Improper Evidence.**

When a case is tried without a jury and the judgment is supported by legal evidence, the fact that improper evidence was admitted will not be cause for the reversal of the judgment.

**2.—Same—Findings by Court.**

The failure of the trial court to find specified facts and propositions of law will not be cause for reversal of the judgment in the absence of any request by appellant for such findings and an exception to the refusal of the court to grant such request.

**3.—Water Company—Breach of Contract—Forfeiture of Franchise.**

In a suit by a city against a water company for the forfeiture of its franchise because of failure to comply with its contract to supply the inhabitants of the city with water suitable for domestic consumption, and to supply the city with a certain water pressure sufficient for fire protection, evidence considered and held sufficient to support the judgment of the court forfeiting the franchise and appointing a receiver for the company.

Appeal from the District Court of Cooke County. Tried below before Hon. R. E. Carswell, Special Judge.

*Gregory, Batts & Brooks* and *Potter & Culp,* for appellant.—To authorize forfeiture there must be gross and willful failure (not temporary) in performance of vital and essential duties. Water Co. v. City of Palestine, 91 Texas, 548; State v. Morris, 73 Texas, 435; State v. Southern Pacific Ry. Co., 24 Texas, 130; State of Wisconsin v. Janesville Water Co., 92 Wis., 496; State v. Com. Bank, 10 Ohio, 535; Booth on Street Railways, sec. 52.

Must be fair notice of defects and reasonable opportunity to correct. City of Winfield v. Water Co., 51 Kan., 85, 86; Water & Light Co. v. City of Lamar, 140 Mo., 157; Waterworks Co. v. City of Burlington, 43 Kan., 730; Sykes v. City of St. Cloud, 60 Minn., 450-452; Wiley v. Athol, 150 Mass., 435.

*J. T. Adams, Garnett & Eldridge* and *Davis & Thomason,* for appellee.—The long and persistent failure of the Water Company to furnish water suitable for domestic use, and to furnish pressure for fire protection, as required by its franchise, as well as its long and continuous failure to live up to the requirements of its franchise in other respects, not only justified, but required the forfeiture of its franchise. Palestine Water Co. v. City of Palestine, 91 Texas, 540; Farmers' Loan & Trust Co. v. Galesburg, 133 U. S., 156; Capital City Water Co. v. State, 105 Ala., 406, 29 L. R. A., 743; Stedman v. Berlin, 97 Wis., 505; City Water Co. v. State, 33 S. W., 259; Foster v. Joliet, 27 Fed., 899; Galesburg v. Galesburg Water Co., 34 Fed., 675.

The pretended contract by which the city council sought to bind their successors for a period of twenty-five years, to pay each year a fixed price for hydrant rental, and which would have exhausted the general revenues of the city for each year, was illegal and void, and the court did not err in so holding. City of Brenham v. Brenham Water Co., 67 Texas, 542; Davenport v. Kleinschmidt (Mon.), 16 Am. & Eng. Cor. Cases, 314; State v. Harrison (N. J.), 5 Am. & Eng. Cor. Cases, 446; Columbus Water Co. v. Columbus (Kan.), 38 Am. & Eng. Cor. Cases, 149.

CONNER, Chief Justice.—This suit was instituted by the City of Gainesville on June 25, 1907, against the appellant company, a private corporation, alleging that Gainesville was incorporated under the General Laws of Texas with a population of more than two hundred and less than ten thousand inhabitants; that in 1883 the city council by ordinance granted the defendant the right to construct and operate a system of waterworks within its corporate limits for twenty-five years, and that this ordinance with a few changes was re-enacted in 1889 and again slightly changed in 1897 so as to require, among other things, that the water furnished plaintiff and its inhabitants by the company should be suitable for domestic consumption and sufficient in quantity to supply plaintiff and its inhabitants. It further alleged that in constructing and maintaining and operating the plant the

company had failed to comply with the terms of its contract in the following respects: First, that the pumping engine used by it was not of the character contracted for; second, that the water mains were not of the material and strength contracted for and were not laid at the depth required by the ordinances; third, that the building in which the machinery of defendant was installed was insecure and not of the material provided for by the ordinances; fourth, that the system operated by defendant had not for many years been capable of discharging water through the fire hose to the height provided for by the contract for fire protection; fifth, that defendant had for several years persistently and continuously failed to furnish the inhabitants of the city with water suitable for domestic purposes, and that the water furnished was polluted, unwholesome and contaminated by disease-breeding germs. It was further alleged that under the terms of the ordinances referred to there was an attempt to rent from defendant during the life of the franchise a number of fire hydrants at a fixed price per annum per hydrant, and that this portion of the ordinance contract was illegal and void, because it attempted to create a debt without out a provision by tax levy or otherwise for its payment, and because it was contrary to public policy for the city council to attempt to bind its successors for this period of time and prevent them from exercising their discretion and judgment in reference to the payment of hydrant rentals, which became a charge against the general revenues of the city, and which had been and was more than sufficient to exhaust the general revenues of the city, leaving it nothing with which to conduct the city government. It was further charged that appellant was insolvent and without credit to improve the plant and put it in better condition, and it was charged that it had no intention of doing so. Other allegations were made, not necessary to refer to, and the petition among other things prayed that the hydrant-rental contract be declared void, that the franchise of the water company be forfeited, that a receiver be appointed, etc.

The company answered by general and special demurrers, a general denial, and pleaded specially, among other things: First, that the city was estopped from setting up a noncompliance with the terms of the ordinance contract with reference to the character of water furnished, pipes laid, etc., and was also estopped from denying the legality of the contract providing for hydrant rentals, because of an alleged compromise judgment of the United States Court and new agreement entered into in 1897.

The trial was before the court without a jury, resulting in a judgment declaring the hydrant-rental contract void; declaring a forfeiture of appellant's franchise and appointing a receiver. The court filed his conclusions of fact and law, and the case is now before us for a review of the proceedings.

Appellant has presented, in a brief of two hundred and seven pages, one hundred and twenty-seven assignments of error. It seems manifest that we will be unable to dispose of each assignment separately. We think, however, they may be classified and disposed of in groups. Quite a number of assignments complain of the introduction of specified testimony over appellant's objection, but these, we think, should

be overruled, in as much as the trial was before the court without a jury, and in as much as will hereinafter appear, we think there is other legal evidence supporting the judgment. In such cases we understand the rule to be that a judgment will not be reversed on the ground of the admission of testimony, whatever may be the objection thereto. See 1 Greenleaf on Evidence, sec. 49; Melton v. Cobb, 21 Texas, 539; Beaty v. Whitaker, 23 Texas, 526; Lindsay v. Jaffray, 55 Texas, 640; 3 App. Civ. Cases, sec. 403, and other authorities that might be cited.

Another group consisting of numerous assignments complain of failures on the part of the court to find specified facts and specified propositions of law. In no instance, however, in the statements under such assignments, do we find that appellant requested findings, as insisted upon, or any exception because of the court's failure, and we therefore think all such assignments should be overruled.

Yet another group of assignments complaining of findings of the court may be disregarded on the ground that they become immaterial in view of the conclusions hereinafter announced. We therefore now address ourselves to a determination of that class of assignments presenting what we deem to be the vital questions involved in this appeal.

In 1883, and again by an amended ordinance in 1897, appellant was granted for a term of twenty-five years the right of installing, operating and maintaining a water system in the City of Gainesville, in consideration of which, among other things, appellant agreed to supply the inhabitants of such city with water "suitable for domestic purposes," and that its system when completed should be capable of "discharging simultaneously five one-inch streams through fifty feet of two and one-half inch hose to a height of one hundred feet," and that the company or its successors and assigns should "operate and keep the said works and every part in constant repair and working order, and upon alarm of fire being given to the person in charge of the engines of said works, either by day or night, to immediately cause sufficient pressure to throw the five streams specified in this ordinance for any length of time needed for the extinguishment of any fire." The court in a series of findings concluded as a matter of fact that both of these contract provisions had been long and persistently violated; that for some five or six years preceding the trial appellant had extensively used water contaminated with sewage and impregnated with colon bacilli and other disease-breeding germs, which was commingled with artesian water furnished to the inhabitants of Gainesville, and that the water so furnished was wholly unfit for domestic use; that "since the 2d day of February, 1897, the defendant has failed to maintain its system of waterworks in such state of repair and efficiency as to be able to throw five streams of water mentioned in the fourth section of said ordinance to the height of one hundred feet as therein required, but has not been able to give more than sufficient pressure to throw said streams at a greater height than from fifty to sixty-five feet."

Both ordinance requirements above specified were certainly material inducements to the grant of the franchise to appellant, and it would be lamentable, indeed, if the inhabitants of the City of Gainesville

were without remedy if the findings of the court above specified are supported by the evidence. This, however, appellant vigorously denies. But after as careful a consideration of the evidence as we have been able to give it, we feel constrained to overrule appellant's contention. The statement of facts consists of some four hundred and fifteen pages, and we can only summarize.

Upon the Saturday preceding the trial a test of the capacity of the waterworks was made upon the square. J. H. Adams testified to the effect that they succeeded in getting the water some forty-five or fifty feet high, and that that was about like the pressure they had been getting at fires for the last three or four years. He says: "With such a pressure as we have been getting for the last five or six years we could not put out a fire in the roof of the courthouse, and we could not have put out a fire in the third story of the Lindsay House, not without a ladder to carry the water up there. I don't believe we could get water on the high-school building; if we had a stream we could throw one hundred feet high, we could put water up there; we could put fires out in the buildings mentioned if we could throw a stream of water one hundred feet high."

J. W. Puckett testified that he had been a member of the Gainesville fire department, with the exception of two years, since 1883 or 1884; that when the waterworks were built he thought they could throw five streams of water at the same time over the cupola of the courthouse (shown by other testimony to be something less than one hundred feet high), but that, again quoting, "they can't do that now; they haven't done it lately. I would judge that they can throw five streams to a height of fifty or sixty-five feet now. The firemen did break through windows of houses when the waterworks were first built, and they also knocked shingles off of houses; they could do that with the pressure they had then; now they would not be able to knock shingles off of a house at any fire I have been to unless they were pretty well burned. . . . I think the stronger the pressure the quicker you can get a fire under control. You can do more effective work with a strong stream; if you have a good pressure you can reach the fire a good deal better. With the present pressure I don't think you could reach a fire in the courthouse steeple. We couldn't put out a fire on the roof of the high-school building with the pressure we have had for the last few years. I don't think they could reach a fire in the roof of the Lindsay House. I was here on the square last Saturday at the time they made that test. I don't think they got the water higher than sixty feet then. I think that was as good pressure as they have been having, if anything a little over an average."

Mart Gwynn testified that he was and had been a member of the Gainesville fire department, and attended fires, and that in his judgment when there was no wind they could get the water "fifty or sixty feet high straight up. I would think that was as high, in my judgment, as we have ever been able to get it. Ordinarily I would think we could get it about fifty feet high." An operator of the telephone company in Gainesville testified that the telephone company had never failed to notify the water company when an alarm of fire was turned

in; that she remembered of no instance in which there was such failure.

There was a great deal of testimony on the issue of the character of water furnished the citizens. We will not undertake to quote it, but deem it only necessary to say that it tended to show that the sewage from "negro town" and other parts of the city drained in the direction of, and to a greater or less extent percolated through the soil into waters gathered in appellant's receptacles for water, from whence it was commingled with artesian water and furnished through hydrants to the citizens; that the water furnished the citizens at times had disagreeable odor and taste, and that many of the citizens declined to use it save for sprinkling yards and like purposes; that on one occasion water had been taken from one of appellant's receptacles for water, designated specimen No. 1, and also from pools on the surface near thereto, designated as specimen No. 2, and sent to Dr. Robert Zeit, professor and head of the department of pathology and bacteriology, Northwestern University Medical School, Chicago, Illinois, who stated that his experience in the bacteriologic examination of water extended over a period of eleven years and included many thousand specimens of water. Doctor Zeit reported that the purest specimen sent (out of appellant's well) could not be safely used as a drinking water; that it would produce principally intestinal diseases— diarrhoea, dysentery, typhoid fever; that it might also act upon the system in such a way as to lower the resistance of the body to the action of infectious matters in general; that specimen No. 2 (the surface water) was "entirely unfit and dangerous to use as drinking water, because it contains twenty-one million five hundred thousand bacteria per litre (about a quart), and is badly polluted with sewage bacteria, colon bacilli types in large numbers and some streptococci."

It is true that upon both issues above discussed appellant offered evidence of a contrary tendency. It offered tests of other physicians who had made a chemical analysis of the water and found it sanitary, and that the test of Doctor Zeit was unfair in that the water had been taken from a supply well and from the surface soon after an overflow, which had impregnated their water receptacles. It also offered evidence tending to show that at the tests made of the system they had not been given time to get up the proper pressure in order to comply with the ordinance requirements. But we think all of this constituted mere conflicts of testimony which was for the determination of the trial court, and that the evidence as a whole can not be said to be insufficient to support his findings.

The court found, and there was evidence tending to support the finding, that appellant was insolvent and unable to carry out the purposes for which its franchise had been extended; so that on the whole we think the court's material findings of fact must be adopted and the judgment affirmed. Palestine Water Co. v. City of Palestine, 91 Texas, 540; Farmers' Loan & Trust Co. v. Galesburg, 133 U. S., 156.

*Affirmed.*

Writ of error granted. Reversed and remanded, 103 Texas, 394,