HANNAH O'BRION, by guardian

*vs.*

THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY.

Cumberland.    Opinion March 28, 1920.

*Assumpsit. Accident insurance. Alleged false representations. Elements necessary to constitute same. Must be made with knowledge of their untruthfulness. Alleged breach of general provisions. Death accidental. Differentiation between condition and cause.*

In an action of assumpsit upon an accident insurance policy brought in behalf of the beneficiary to recover the sum of five thousand dollars for the death of the assured, James H. O'Brion, alleged to have been caused by accidental injury, and before the Law Court on report it is

*Held:*

1.  That the assured made no false representations material to the acceptance of the risk or to the hazard assumed by the company.

2.  That there was no violation of the general provision of the policy giving the company the right to examine the body and make an autopsy, nor of the provision giving the company the right to be present if any autopsy were made and to have timely notice thereof.

3.  That the death of the assured resulted solely from the accident. Even if the assured at the time of the accident was afflicted with Bright's disease that was merely a condition and not a cause, and had nothing to do with the accident nor with the death which followed within a few hours thereafter.

An action of assumpsit upon an accident insurance policy to recover five thousand dollars for the death of the assured, James H. O'Brion, the plaintiff, being the beneficiary named in the policy. Plea, the general issue, with a brief statement, which was amended and plaintiff filed a counter brief statement. By agreement of the parties, the case was reported to the Law Court, upon so much of the evidence as was legally admissible for such decision as the law and the evidence required. Judgment for plaintiff for $5,000, with interest from date of writ.

Case stated in the opinion.

*Henry C. Sullivan, and William A. Connellan,* for plaintiff.

*David E. Moulton, and William H. Gulliver,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J. This is an action of assumpsit upon an accident insurance policy brought in behalf of the beneficiary to recover the sum of five thousand dollars for the death of the assured alleged to have been caused by accidental injury. The policy was issued to James H. O'Brion, the assured, on June 19, 1915, for the term of one year and renewed on June 19, 1916, for another year. The beneficiary was Hannah O'Brion, a woman about eighty years of age and the mother of the assured. The automobile accident which the plaintiff claims caused the fatal injury, occurred on the afternoon of Sunday, November 26, 1916, and death ensued on the morning of the next day, November 27, 1916. The case is before the Law Court on report.

The defendant by way of brief statement, set up four distinct grounds of defense, and these will be considered in their order, as pleaded.

1. False representation by the assured in item 17 of the application, viz: "My habits of life are correct and temperate; I am in sound condition mentally and physically; my speech or hearing is not impaired. I have not lost the sight of either eye, nor have I had a cataract or any disease of either eye; I have never had disorders of the brain, paralysis, fits, or any deformity." The policy contains the usual stipulation that the right of recovery shall be barred in the event that any one of the statements or representations material to the acceptance of the risk or the hazard assumed by the company is false. That such a stipulation is held to be valid and binding needs no citation of authorities. Two facts however must concur to give it force; first, the statement must be untrue as of the time when made, and second, it must be material either as regards the acceptance of the risk or as regards the hazard assumed by the company. If either element is lacking the stipulation fails.

The statement made by this applicant on June 19, 1915, lacks the first element because it was not false. The evidence shows that the

assured was a man forty-four years of age, unmarried, a dentist in the city of Portland and in active practice up to the very day of the accident. His associates and intimate friends knew him as a man of most exemplary habits, a total abstainer from the use of intoxicating liquors, and so far as they were able to determine in good health. His brother, Dr. Dennis J. O'Brion, who is a practicing physician in Portland, testified that James' health was "all right" and he had never known of his complaining of any illness whatever except on one occasion. That was in 1911 when the assured complained to him of pain in the right loin, and suspecting it might be caused by renal colic, the physician had X-ray pictures taken at the Maine General Hospital. These pictures however were negative in character and, after the administering of a laxative, the trouble disappeared and did not recur. No other instance of illness or treatment by a physician from June, 1911, to the day of the accident, a period of over five years, appears in the evidence, with the exception of a slight injury to the wrist in 1915, from which he quickly recovered. In view of this history it is evident that the assured cannot be charged with making false statements in answering item 17.

The counsel for defendant relies in opposition upon the condition found at the post mortem examination, indicating as he claims, the existence of Bright's disease. The exact condition and its significance are matters of controversy between the two physicians, but in any view they weigh but little against the positive and uncontradicted testimony as to his general condition of health when the application was signed. His statement was made honestly, truthfully and in accordance with the facts as he knew them. Under such circumstances the law does not require the applicant to wait until an autopsy has been performed upon his body before the truth of his statement can be accepted at its full force.

2. In the second place it is pleaded that a false statement as to a material fact was made under item 19 of the application, viz: "I have not been disabled, nor have I received medical advice or treatment, nor had any local or constitutional disease during the past five years except as follows: In February, 1915, for injured wrist lasting two weeks."

This paragraph however is marked in the application with a star referring to a foot-note in which the company specifies that this statement is "only required for health insurance." The policy under consideration was for accident not for health insurance, and therefore

this statement was entirely immaterial. In fact this point, though raised in pleading, is not pressed in argument.

3. A breach of general provision number 8 in the policy which reads:

"Where not forbidden by statute any medical adviser of the Company shall have the right and opportunity (1) to examine the person of the insured in respect to any injury as often and in such manner as he requires during the pendency of the disability:   (2) to examine the body or make an autopsy in case of death, and (3) to be present if any autopsy be made, timely notice of which must be given to the Company."

The breach now complained of is that the company "was not accorded the right or opportunity to examine the body or to make an autopsy following the death or to be present in case any autopsy was made, nor was the company notified of any autopsy."

The facts as to the autopsy made in this case are briefly these: Dr. Dennis O'Brion, physician, brother of the assured, thinking that the death was caused by the criminal negligence of the driver of the automobile, was determined to set in motion the necessary legal machinery to bring the guilty party to justice.   As soon as he heard of James' death he went to his mother's house and under his direction the body was removed to an undertaker's room.   Then he applied to the County Attorney and requested that an autopsy be made. That official declined to order one, but after several interviews and upon the continued insistence of the brother, he finally told the medical examiner, Dr. Conneen, that the law gave the medical examiner the right to hold the autopsy if he deemed it necessary, and if he did deem it necessary he should go ahead and perform it. Accordingly the medical examiner performed the autopsy on the afternoon of November 27, at the undertaking rooms, and was assisted by Dr. O'Brion and the undertaker's assistant.   This was in accordance with the statute providing for autopsies by medical examiners, which requires that they be made "in the presence of a physician and one other discreet person."   R. S., Chap. 141, Sec. 3. When the autopsy was completed the medical examiner made the required official report to the County Attorney and Attorney General.

These facts show no violation of either clause (2) or clause (3) of paragraph 8 of the policy.   Clause (2) gives the company itself the right to make an autopsy and that privilege has not been denied here.

But the request must be made either directly or indirectly of the beneficiary, who is the sole party in interest in the enforcement of the policy, and it must be made within a reasonable time. *Wehle* v. *U. S. M. Ac. Ass'n.*, 153 N. Y., 116; *Am. Emp. L. Co.* v. *Barr*, 68 Fed., 873; *Johnson* v. *Bankers Mut. Cas. Ins. Co.*, 129 Minn., 18, L. R. A., N. S., 1915 D., 1199, and note. No such request was made by this defendant of Mrs. O'Brion, the beneficiary, nor of anyone else as representing her, at any time, and therefore there has been no denial of its contract right. And further, no act of the beneficiary prevented or hindered the company from making such request if it had seen fit so to do.

Nor has clause (3), which requires timely notice to the company of a proposed autopsy been violated. The autopsy contemplated by that provision is unofficial, one made at the instigation of the beneficiary, and then it is only fair, as prescribed, that seasonable notice thereof be given to the company. Here however no autopsy was made at the instigation of the beneficiary or at her request. It is very doubtful whether in her condition of age and feebleness she fully comprehended that one was to be made when the body was removed from her house to the rooms of the undertaker. She testifies that she supposed it was to be prepared for burial, and she protested against its removal even for that purpose. She had no part in the proceedings. The brother was wholly responsible therefor, and therefore no notice could be given by her. Nor was one required even if she had known, because it was an official autopsy made by an officer of the State in behalf of the State and under the restrictions provided by statute. Only such persons could be present as the medical examiner under the statute should see fit to admit. The parties to this controversy were entire strangers to that proceeding and could claim no rights therein. This ground of defense therefore is without merit.

4. Finally the defendant contends that the death of the assured resulted from causes other than through accidental means.

This is a question of fact and from the evidence and circumstances we find no difficulty in reaching the conclusion that the accident was the sole cause of the death. Without rehearsing the testimony in detail it is sufficient to say that the serious nature of the accident itself, the overturning of the automobile with O'Brion beneath it, the excruciating pain in the head complained of by him during the night which opiates were almost powerless to relieve, the injury upon

the crown of the head manifested by the bruise upon the scalp, the effusion of blood into the occipital region, the opinion of Dr. O'Brion that death was caused "by compression of the brain due to cerebral hemorrhage," the official report of the medical examiner, Dr. Conneen, that the cause of death was "Cerebral hemorrhage and concussion (shock) caused by accident, contributing causes kidney and heart lesions," together with the stubborn fact that death actually resulted in twelve or fifteen hours after the accident, with no intervening cause whatever, lead to but one conclusion, death by accident. Reason and common sense will permit no other.

As opposed to these facts the defendant suggests two theories; first that death may have been caused by overdoses of morphine administered by Dr. O'Brion. But this theory is annihilated both by the physician who administered them and by the medical examiner who says he found at the autopsy no evidence of morphine poison.

The second suggested cause is Bright's disease, evidences of which the medical examiner says he discovered in the post mortem examination. Both physicians agree that one kidney contained a capsulated stone, but as to the existence of Bright's disease they are at variance. However, even granting that the assured was afflicted with that disease, it did not affect the situation here nor the legal liability of the defendant under this accident policy. Whatever the condition, it was simply a condition and not a cause. It had nothing whatever to do with the accident nor with the death which so closely followed. It was not the proximate moving cause of the fatal injuries. *Bohaker* v. *Ins. Co.*, 215 Mass., 32; *Collins* v. *Casualty Co.*, 224 Mass., 327; *Moon* v. *Order of Com'l Trav.*, 96 Neb., 65, A. & E. Ann. Cas., 1916 B, 222 and note; *Hall* v. *Gen. Ac. Co.*, 16 Ga. App., 66; 85 S. E., 600; *Driskell* v. *U. S. Health &c. Ins. Co.*, 117 Mo. App., 362, 93 S. W., 880. That Bright's disease, if it existed, had no connection with the death is admitted by the medical examiner, a witness for the defendant, whose final word, after a protracted direct and cross examination was this: "the direct and immediate cause of his death was the accident. It was in my estimation." Further discussion is unnecessary. The theories of the defendant are factless.

The entry should be,

*Judgment for plaintiff for $5,000, with interest from date of the writ.*