INTERNATIONAL TRAVELERS' ASS'N v. MELAUN. (No. 116.)*

(Court of Civil Appeals of Texas. Waco. Jan. 30, 1925. Rehearing Denied March 5, 1925. Dissenting Opinion April 3, 1925.)

I. Evidence ⟨☞⟩126(I)—Statements of insured soon after regaining consciousness held part of res gestæ.

Evidence of insured's statements soon after his alleged fall and injury, or immediately after he regained consciousness, that he slipped and fell and back of his head struck concrete floor, that his head hurt very badly, that he was in dizzy condition, were properly admitted as part of res gestæ in action on accident policy.

2. Appeal and error ⟨☞⟩1052(8)—Any error in admitting statements of insured as to manner of injury held harmless in view of evidence supporting verdict.

Where evidence supported finding that insured accidentally fell, striking his head on concrete floor, from effects of which he died, any error in admitting certain statements by him soon after injury, or immediately after regaining consciousness, as to manner of falling, was harmless.

3. Appeal and error ⟨☞⟩931(6)—Presumption that trial court as trier of fact, based judgment on legal evidence.

Presumption is that trial court as trier of fact based judgment on legal and competent evidence, and disregarded illegal evidence, if there was any admitted.

4. Insurance ⟨☞⟩662(I)—Evidence of beneficiary's physical and mental incapacity at time of autopsy of insured held relevant.

Evidence that at time of death of insured, and at time when autopsy was performed, beneficiary was not physically or mentally capable of doing anything, was relevant on question whether autopsy was performed without beneficiary's consent, and whether doing of something over which she had no control could not affect her rights.

5. Insurance ⟨☞⟩662(I)—Evidence of beneficiary's lack of knowledge of existence of policy until after burial of insured held relevant to rebut any presumption of bad faith as to autopsy.

Evidence of beneficiary that she did not know accident insurance policy was in force until after insured was dead and buried was admissible to rebut presumption of bad faith in anything that might have been done with reference to autopsy.

6. Insurance ⟨☞⟩665(5)—Evidence held to support finding of insured's death from accidental cause.

Evidence held to support finding of insured's death from accidental cause.

7. Insurance ⟨☞⟩146(3)—Contracts always construed against insurer.

Insurance contracts are always to be construed against insurer and in favor of insured or his beneficiary.

8. Insurance ⟨☞⟩146(3)—Conditions of insurance policies construed against those for whose benefit they are reserved.

Conditions in insurance policies should be construed strictly against those for whose benefit they are reserved.

9. Insurance ⟨☞⟩146(3)—Forfeiture clauses not strictly construed in favor of insurer.

A clause of forfeiture is not to be strictly construed in favor of insurer.

10. Insurance ⟨☞⟩549—Clause of accident policy providing for autopsy construed.

Clause of accident insurance policy providing that, if autopsy be made, insurer should be given timely notice thereof and right and opportunity for its representative to attend and participate, applied only where autopsy was made with consent of surviving wife, and especially when she was sole beneficiary named.

⟨☞⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 22, 1925.

**11. Insurance ☞549—To base defense on non-observance of autopsy clause, insurer must prove autopsy was made with beneficiary's consent.**

Where accident policy properly construed provided that, if autopsy of deceased was made with consent of surviving wife, insurer should be given timely notice thereof and right to participate, to base defense on nonobservance of such clause it was incumbent on insurer to allege and prove that it was made with her consent.

**12. Insurance ☞668(15)—Evidence held sufficient to raise question of fact as to insurer's waiver of breach, if any, of autopsy clause of policy.**

Evidence *held* sufficient to raise question of fact as to insurer's waiver of breach, if any, of autopsy clause of accident insurance policy.

Taylor, Special Associate Justice, dissenting.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. Adah Melaun against the International Travelers' Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Claude C. Westerfeld and Wm. F. Robertson, both of Dallas, for appellee.

STANFORD, J. This case is before us on motion for rehearing. The motion is granted. All former opinions are withdrawn, and this and the concurring opinion of Special Chief Justice ROGERS are substituted as the opinion of the court in this case.

Action by Mrs. Adah Melaun, widow of Fred. J. Melaun, deceased, against the International Travelers' Association on an accident insurance policy issued to the deceased, in which his wife, appellee, was named as beneficiary. The case was tried before the court without a jury. From a judgment in favor of plaintiff, defendant appeals.

On the material issues in the case we make the following

### Findings of Fact.

The deceased, on April 16, 1922, accidentally slipped and fell on the wet and slippery concrete floor of his garage, striking his head with great force on said concrete floor, inflicting bodily injuries which directly, independently, and exclusively of all other causes, resulted in his death on May 26, 1922. About the time he received said injury, his wife, appellee herein, was confined, and soon after said confinement was compelled to undergo a serious operation, confining her to her bed for more than a month, and at the time of her husband's death she was not able physically or mentally to do anything, and continued in such condition for some time after her husband's death.

The deceased died at his home, 1920 Forrest avenue, Dallas, and the day after his death an autopsy was made upon the body of the deceased at an undertaking establishment, where the body had been taken to be prepared for burial. Dr. Marshall, the family physician, who attended the deceased, Fred J. Melaun, during his last sickness, gave as the cause of his death cerebral hemorrhage, resulting from a blow or wound on the head. The brothers 'or father of the deceased indicated to the doctor that they wanted an autopsy. They seemed to question the doctor's statement as to the cause of death, and to satisfy them the doctor had the autopsy made at said undertaking establishment. There is no evidence that appellee was consulted about said autopsy, or that she knew anything about it until after it was done. There were three physicians took part in said autopsy. Two of them testified on the trial without objection. The third was not called to testify.

The autopsy, as far as the record shows, had no relation to any question of insurance on the life of the deceased; in fact, we conclude from the record that neither the doctors who performed said autopsy nor the brothers or father of the deceased who suggested same knew that the deceased had any insurance. At the time of the death of her husband, appellee knew that her husband had an insurance policy, but did not know it was in force, and knew nothing about the terms of same, and never knew it was in force until the following Tuesday, the day after his burial.

On June 9th appellant furnished blanks to be used in making proof of death, one by the beneficiary, one by the undertaker, one by the person or persons who witnessed the accident, and the other by the attending physician, and also requested a full statement from the physician who was in charge when the autopsy was held, all of which was furnished appellant on June 18th. Appellant never asked for a second autopsy, and never denied liability on the ground that its representatives were not notified in time to be present and participate in the one that was held, until July 3, 1922. At the time the autopsy was had, appellee had no claim pending, and neither appellee nor any of her relatives knew she would have any claim. The failure to receive notice of said autopsy cannot be attributed to any bad faith or improper motive on the part of any one. Neither did such failure result in any injury to appellant.

### Opinion.

[1-3] Appellant makes no question as to the sufficiency of the pleadings to raise all issues made by the evidence. By its assignments

of error 6, 11, and 15, appellant complains of the admission in evidence of certain statements made by the deceased soon after his alleged fall and injury, or immediately after he had regained consciousness, to the effect that he slipped and fell and the back of his head struck on the concrete floor, and complained that his head hurt very badly and that he was in a dizzy condition, etc., on the ground that same was hearsay and was self-serving declarations. In our opinion, this testimony was properly admitted. It was part of the res gestæ. However, if the trial court was in error in admitting any of said statements, under the facts of this case it was harmless error and affords no reason for reversal, because legal evidence, conceded to be properly admitted—at least, not objected to by appellant—was ample to support the finding of the court that the deceased did accidentally fall, striking his head on said concrete floor, seriously injuring his head, from the effects of which he died. This being true, and the case having been tried before the court, the presumption is that the trial court based his judgment on such legal, competent evidence, and discarded all illegal evidence, if there was any admitted. Appellant's sixth, eleventh, and fifteenth assignments are overruled. Gainesville Water Co. v. City of Gainesville, 57 Tex. Civ. App. 257, 122 S. W. 959; Morris v. Moon (Tex. Civ. App.) 120 S. W. 1063.

[4] In its assignments 7, 9, and 10, appellant complains of the admission of evidence to the effect that at the time of the death of her husband, and at the time the autopsy was performed, appellee was not physically or mentally capable of doing anything, upon the ground that said evidence was irrelevant and immaterial. If appellee was in such condition physically and mentally that she was incapable of doing anything, then the autopsy was performed without her consent and she was not responsible for its having been performed, and the doing of something to which she did not consent and over which she had no control could not affect her rights. This evidence was admissible. Appellant's assignments 7, 9, and 10 are overruled. O'Brion v. Columbian National Life Insurance Co., 119 Me. 94, 109 A. 379, and cases cited.

[5] In its assignment No. 8, complaint is made of the admission of the evidence of appellee to the effect that she did not know the policy was in force until after the deceased was dead and buried, etc., upon the ground that same was irrelevant and immaterial and that she was charged with knowledge of the contents of said policy; but the record discloses that the policy would not show whether the premiums had been kept paid up, and to ascertain this fact inquiry had to be made at appellant's office. This evidence was admissible to rebut any presumption of bad faith on the part of appellee, her

attorney, or any of her relatives in anything they may have done or may have failed to do with reference to said autopsy. We overrule appellant's eighth assignment.

[6] By its seventeenth assignment of error, appellant contends that there is no direct legal evidence in the record showing that said Fred J. Melaun's death was the result of injuries received through "violent, external and accidental means, independent of all other causes." The evidence is undisputed that Fred J. Melaun, prior to his injury, was a strong, healthy young man, about 30 years of age, nearly 6 feet tall and weighed about 200 pounds; that his garage had overflowed and the water had receded, leaving sediment covering the concrete floor of said garage, rendering it wet and slippery; that while his garage was in this condition—trash over it and being wet and slippery—on or about April 16, 1922, he was cleaning a large machine, while Clarence Green, a negro, was moving tools out to wash them, when Melaun's feet slipped from under him and he fell. Clarence ran to him and found him on the floor, in an unconscious condition. He was carried into the office and lay there some 30 minutes before he fully regained consciousness. He was carried home, confined to his bed for some time; then seemed to improve a little; then grew worse until he died on May 26th. The attending physician testified he died of cerebral hemorrhage, caused by a fall or blow on the head. Appellant offered no evidence in rebuttal. The evidence was ample to support the judgment of the trial court. We overrule appellant's seventeenth assignment.

Appellant's fifth assignment is as follows:

"Because the judgment is contrary to the law and the evidence in the case, in that, clause 8, article 9, of the policy held by said Fred J. Melaun provides: 'The association, or its representatives, shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of the claim hereunder, and if an autopsy be made, the association shall be given timely notice thereof and the right and opportunity for its representatives to attend and participate.' And that provision 6 of article 10 of said policy is as follows: 'Strict compliance on the part of the insured and the beneficiary with all provisions of this policy is a condition precedent to recovery hereunder.'

"That the uncontroverted evidence shows that the deceased, Fred J. Melaun, died on May 26, 1922, and was buried on the 29th day of May, 1922, and that an autopsy was held upon said Fred J. Melaun the day after his death, and that no timely notice or pretended timely notice of said autopsy was given to the defendant herein, so that it might have the right and opportunity for its representatives to attend and participate therein, which said failure upon the part of the plaintiff, as set forth in the above-quoted paragraph of said policy, prohibited recovery herein."

The above clause 8 of article 9 appears as one of 17 clauses under article 9, which article is designated "Standard Provisions." Clause 7 of said article is as follows:

"Affirmative proof of loss must be furnished to the association at its said office in case of claim for loss of time from disability, within ninety-one days after the termination of the period for which the association is liable, and in case of claim for any other loss, within ninety-one days after the date of such loss."

Clause 6, above, is one of eight clauses under article 10, designated "Additional Provisions."

[7-10] Insurance contracts are written by the insurer and are always to be construed against the insurer and in favor of the insured or his beneficiary. It is also true that the conditions in insurance policies, as in all other contracts, should be construed strictly against those for whose benefit they are reserved. Paul v. Travelers' Insurance Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758. A clause of forfeiture is not to be strictly construed in favor of the company in such case. McFarland v. Accident. Ass'n, 124 Mo. 204, 27 S. W. 436. On the contrary, while it should be given a reasonable interpretation, yet the inclination of the courts should be against the forfeiture, and if clauses of a policy are conflicting or of doubtful meaning, such conflict or doubt should be resolved in favor of the assured or his beneficiary. The latter part of clause 8 copied above, "and if an autopsy be made, the association shall be given timely notice thereof and the right and opportunity for its representative to attend and participate," evidently means that if any autopsy is made with the consent of the surviving wife, and especially when she is the sole beneficiary named in the policy. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Lindh v. Great Northern Ry. Co., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018; O'Brion v. Columbian Nat. Life Ins. Co., 119 Me. 94, 109 A. 379.

[11] If it was the intention of the company, as seems to be expressed in said clause, and as is urged by appellant, that the rights of the surviving wife and beneficiary should be swept away by the unauthorized act of a third party in ordering an autopsy without her consent, then said clause, so construed, would be wholly void and unenforceable. So, in order to base any defense whatever on the nonobservance of said clause, it was incumbent upon appellant to allege and prove that said autopsy was made with the consent of appellee, and this we think appellant wholly failed to do. There is no evidence in the record that tends in any way to show that appellee was consulted about said autopsy, or that she knew anything about it until after it was done, and the circumstances tend very strongly to show affirmatively that it was done without her knowledge or consent. This was at least a question of fact for the trial court, and one the trial court could very properly resolve in favor of appellee. And from what we have said above, it necessarily follows that if appellee was in such condition physically and mentally as that she was incapable of doing anything, then any decision she might have made affecting her rights would not be binding on her and would not prejudice her rights. She had had a fearful experience in childbirth about the time her husband was injured, and then as a result of said experience had to undergo a serious operation, from the effects of which she was confined to her bed for 30 days, and, as testified by her, she was in such a serious condition that just prior to her husband's death they kept his dangerous condition from her. Then following all of these harrowing and nerve-racking experiences, and while in this weakened and nervous and prostrated condition, came the shock of her husband's death. Dr. Marshall, her physician, said she was not able physically or mentally to do anything. The evidence was ample to raise the question of fact as to whether or not she was capable of making a decision that was binding on her, and was such that the trial court could very properly resolve said question in favor of appellee.

[12] Again, we have serious doubt if clause 8 of article 9 has any application under the facts of this case. The sense of that clause is that the company shall have the right to examine the person of the assured at any reasonable time during the pendency of a claim, "and if an autopsy be made during the pendency of a claim," to be notified and to have its representative present. At the time the autopsy in this case was made no claim had been made by appellee, no claim was pending under this policy, and neither appellee nor any representative of hers knew that any claim could be made. That matter could not be determined from the policy and other papers in the possession of appellee, and even the attorney who was called to examine said papers after the autopsy decided from his examination of said papers that no claim could be made, and did not know one could be made until the third day after the autopsy, and then learned said fact by inquiring at the home office of appellant. The clause in question evidently was intended to apply in cases where a claim against the company has been made and said claim is pending under investigation and an autopsy is decided upon by the claimant for the purpose of substantiating such claim. At least, it is very doubtful if this clause had any application to the facts of this case, and we believe it was the duty of the trial court to resolve said doubt in favor of the beneficiary of the assured.

Further, there is nothing in this record that would indicate that there was any bad

faith on the part of any one in failing to give previous notice to appellant that an autopsy was going to be made, and appellant does not claim there was any bad faith. There is nothing to indicate that it was made for the purpose of procuring evidence to substantiate a claim against any insurance company, and appellant does not claim it was made for such purpose. There is nothing to indicate that it was not fairly made, and made by an impartial, competent physician. Appellant does not contend otherwise. It was not made by Dr. Marshall, plaintiff's family physician, but was made by Dr. James E. Tompkins, who has charge of the laboratory work at St. Paul's Sanitarium, and was made at Smith's Undertaking Company, in the presence of several other physicians. There is no evidence that appellant suffered any injury by not being notified, or that appellant would have had a representative present if it had been notified. Appellant does not so contend. The body was buried on Monday, the 29th of May. On Tuesday, May 30th, appellee's attorney learned by making inquiry at appellant's office that the policy was in force. On June 1st, but two days after the burial, appellee's counsel wrote appellant at its home office in Dallas, Tex., informing appellant of the autopsy had on Saturday. On June 9th appellant furnished blanks to be used in making proof of death, and, in addition, requested a full statement from the physician in charge when the autopsy was held. Proofs of death were made and the statement furnished. Negotiations were continued both by oral conversations and correspondence between appellee's attorney and appellant and its general attorneys, until July 9th, appellee's attorney endeavoring to ascertain whether or not appellant intended to deny liability, and especially upon the ground that they were not notified of the autopsy, and appellant evading said question until July 3d, when, for the first time, appellant denied its liability upon said ground.

The record shows that by mistake, oversight, a lack of knowledge that the policy was in force, or by reason of a combination of circumstances over which appellee had no control, the autopsy was held without notice to appellant. If appellant had notified appellee when it first learned of the autopsy, about two days after the burial, that it desired to have a representative present at an autopsy, or that it intended to rely upon a breach of clause 8, article 9, appellee could, and doubtless would, have had said body exhumed and arranged for a second autopsy, giving appellant an opportunity to participate; but appellant expressed no such desire and evaded the question of making a defense on said alleged breach, from June 1st until July 3d, and then, for the first time, denied liability on said ground. Appellee, even then, offered to have the body exhumed and arrange a second autopsy for appellant's benefit, which offer appellant refused. The policy does not make a breach of clause 8, article 9, grounds for forfeiting the policy. The provisions of this clause are on the same basis as the provisions of clause 7, providing for proof of loss, and the same rules of law applicable to a waiver of failure to furnish proof of loss are applicable to the provisions of clause 8. If there was any breach of the provisions of clause 8, article 9, such breach, we think, was waived. At least, the evidence was sufficient to raise a question of fact on this question for the trial court. We overrule appellant's fifth assignment. The following authorities, to some extent, bear upon the questions herein discussed: American Natl. Ins. Co. v. Nuckols (Tex. Civ. App.) 187 S. W. 497; Ætna Life Ins. Co. v. Robinson (Tex. Civ. App.) 262 S. W. 118; Crotty v. Continental Casualty Co., 163 Mo. App. 628, 146 S. W. 833; Wehle v. Mutual Accident Ass'n, 153 N. Y. 116, 47 N. E. 35, 60 Am. St. Rep. 598; Johnson v. Bankers' Mutual Casualty Ins. Co., 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154; Massachusetts Bonding & Ins. Ass'n v. Duncan, 166 Ky. 515, 179 S. W. 472; Loesch v. Union Casualty Co., 176 Mo. 654, 75 S. W. 621; O'Brion v. Columbian Nat. Life Ins. Co., 119 Me. 94, 109 A. 379.

We have carefully examined all the assignments of appellant, and we find no reversible error, and therefore overrule all assignments and affirm the judgment of the trial court.

ROGERS, Special Chief Justice (concurring). The writer concurs in the affirmance of the judgment appealed from, but not in all that is said in the opinion of Justice STANFORD. He prefers this statement:

The deceased, Fred J. Melaun, at the time of the accident alleged to have caused his death, was about 30 years of age, a large man, nearly 6 feet high, weighed about 200 pounds, and appeared to be in good physical condition. On or about April 16, 1922, he fell on a wet and slippery concrete floor, striking the back of his head so as to render him unconscious for about 30 minutes. From this hurt he never recovered, and finally died from its effects, on May 26th, following. This was the finding of the court below, and the evidence is sufficient to support the finding. An autopsy was made on his remains the day after his death, and he was buried May 29, 1922. The appellant was given no notice that an autopsy would be made, or had been made, until the day after the burial.

The policy sued on provided:

"If an autopsy be made the association shall be given timely notice thereof and the right and opportunity for its representative to attend and participate."

And:

"Strict compliance on the part of the insured and the beneficiary with all the provisions of this policy is a condition precedent to recovery hereunder."

The appellant pleaded:

"That in failing to give the notice as required by said policy, the insured and the beneficiary failed to comply with the provisions of the policy hereinbefore quoted, which is a condition precedent to the right of recovery thereunder, and therefore this defendant says that there is no liability hereunder."

By assignment the appellant contends that the judgment of the trial court is contrary to the law and the evidence because of the failure of appellee to comply with the provisions of the policy.

There was no evidence that this autopsy was ordered, requested, or assented to by Mrs. Melaun. It does not even appear that she knew that it was going to be made; for the body was removed to an undertaker's establishment, to be prepared for burial, and there the autopsy was made. Dr. Marshall, who attended the deceased, and who was in attendance on his wife, testified that at the time "she was not able physically or mentally to do anything." And as to why the autopsy was made he testified:

"With reference to the autopsy, his brothers or father first indicated that they wanted an autopsy, seemed to question—they did not say, I just inferred—might have taken something, or drank something. They were not satisfied with the cause of his death having been cerebral hemorrhage. That was the thing that made me feel like we ought to have an autopsy made."

It was further shown, by uncontradicted evidence, that while Mrs. Melaun knew that there was some kind of policy on her husband's life, she had never seen it and knew nothing of its terms and conditions. So that even had she been normal, and had consented to the autopsy, she would have been guilty of no intentional violation of its conditions. And it is to be noticed that the appellant, in its pleading above quoted, does not allege that it had suffered any injury on account of appellee's failure to give it timely notice of the autopsy, or that her case cannot be made out exclusive of the evidence developed by the autopsy, nor did it object to the evidence developed by the autopsy, but merely denies liability because of the failure of appellee to give it the "timely notice" provided for in the policy. In reply to this defense, it was only necessary for appellee to allege and prove a sufficient and reasonable excuse for her failure to literally comply with the provisions of the policy. This she did by both pleading and evidence. Born v. City of Spokane, 27 Wash. 719, 68 P. 386; Durham v. City of Spokane, 27 Wash. 615, 68 P. 383. As to the sufficiency of her excuse, because of her mental and physical condition, for not giving the notice, as said in the case of Barclay v. Boston, 167 Mass. 597, 46 N. E. 114:

"The question is not whether the best evidence was introduced, nor whether there was proof beyond a reasonable doubt, but whether there was any evidence from which it might fairly be inferred that she was incapacitated."

The case of O'Brion v. Columbian Nat. Life Ins. Co., 119 Me. 94, 109 A. 379, is very illuminative of this one. There the policy provided that—

"Any medical adviser of the company shall have the right and opportunity * * * (2) to examine the body or make an autopsy in case of death; and (3) to be present if any autopsy be made, timely notice of which must be given to the company."

And there, as here, an autopsy was made without the insurer being given any notice. And there, as here, the autopsy was procured, not by the beneficiary, but by a brother of the deceased. The breach complained of was that—

The company "was not accorded the right or opportunity to examine the body or to make an autopsy following the death or to be present in case any autopsy was made, nor was the company notified of any autopsy."

The Supreme Court of Maine held, inter alia:

"Nor has clause 3, which requires timely notice to the company of a proposed autopsy, been violated. The autopsy contemplated by that provision is unofficial—one made at the instigation of the beneficiary—and then it is only fair, as prescribed, that seasonable notice thereof be given to the company. Here, however, no autopsy was made at the instigation of the beneficiary or at her request. It is very doubtful whether in her condition * * * she fully comprehended that one was to be made when the body was removed * * * to the rooms of the undertaker. * * * She had no part in the proceedings. The brother was wholly responsible therefor, and therefore no notice could be given by her."

The other assignments show no error sufficiently grave to justify a remanding of the case.

TAYLOR, Special Associate Justice (dissenting). This case was presented before Special Chief Justice Robert H. ROGERS, Associate Justice J. W. SPIVEY and Special Associate Justice Walton D. TAYLOR. A majority opinion was written by Associate Justices SPIVEY and TAYLOR, reversing this case. A motion for rehearing was filed, and before it had been acted upon Justice SPIVEY'S term of office expired and he was succeeded by Associate Justice STANFORD. When the motion for rehearing was presented, the same was granted and the case affirmed by Special Chief Justice ROGERS and

Justice STANFORD, with Special Associate Justice TAYLOR dissenting. All former opinions were withdrawn. I cannot agree to the opinion affirming this case, and therefore file this, my dissenting opinion.

This suit was instituted by the appellee, Mrs. Adah Melaun, against appellant in the Fourteenth district court at Dallas. As a basis of her suit she alleged that the appellant had issued and delivered its accident insurance policy upon the life of her husband, in which she was the sole beneficiary, and that all premiums had been paid thereon at the time of the death of her husband, Fred J. Melaun; alleging that her said husband died as the result of an accidental fall as follows:

"Plaintiff represents that Fred J. Melaun, on the —— day of April, 1922, received serious injuries from a fall upon a concrete floor at his place of business in the city of Dallas, from which fall and injuries he died on the 26th day of May, 1922, and further that said fall caused injuries of a serious nature and caused the said Melaun to suffer intensely for a long time thereafter, and caused him to have fainting spells; that after said accident as aforesaid, on or about the —— day of May, 1922, as a result of the serious injuries received and while in a dazed condition, he again fell upon the floor of the said shop and struck his head with great violence and force upon the concrete floor thereof, thereby inflicting serious injuries rendering him unconscious; and that by reason of such injuries the said Melaun died on the 26th day of May, 1922."

The appellant pleaded a general denial, and in addition thereto pleaded, among other things, the following in bar of plaintiff's cause of action:

"That clause 8 of article 9 of the policy sued upon reads as follows: 'The association or its representative shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of the claim hereunder, and if an autopsy be made, the association shall be given timely notice thereof, and the right and opportunity for its representatives to attend and participate.'

"That provision 6 of article 10 of said policy is as follows: 'Strict compliance on the part of the insured and beneficiary with all provisions of this policy is a condition precedent to recovery hereunder.' "

And in this connection the appellant pleaded that an autopsy was held, and that the appellee failed to give appellant company notice thereof, and that the company had no notice of such autopsy until after the deceased had been buried; that appellee's failure to give notice as required by said policy was a condition precedent to her right of recovery; and therefore that there was no liability to the appellee under the policy sued upon. In response to this defense of the insurance company, the appellee pleaded in substance as follows: That at the time of the accident sustained by her husband, and from then up until his death and burial, she was seriously ill and was unable to attend her husband during his illness, and had little opportunity of communication with him, and that by reason of her serious condition after her operation she was not advised of his condition; that she did not know the terms and conditions of the insurance policy, and that such policy was in the hands of her mother, and that at the time of her husband's death she was unable to look after any of the details connected with the burial of his remains and was unable physically or mentally to give proper attention to such business at the time of the death of her husband, and that she did not know that said policy was in force and effect until after his burial; that immediately after the burial she learned that said policy was in force, and that after being so informed her attorney immediately communicated with the defendant company, advising it of the death, burial, and autopsy of her deceased husband, and that thereafter such company, through its secretary, furnished blanks to be used in connection with the proof of death of the assured; that the furnishing of such blanks under such circumstances as alleged estopped the defendant from denying liability under said policy; and further pleaded that immediately upon the company denying liability because no notice of the autopsy had been given it, she offered to allow the insurance company to exhume the body of her deceased husband and then examine him.

The case was tried before the court without a jury, and judgment was rendered in favor of the appellee. The controlling question in this case, in my view of the record, is whether the plaintiff is entitled to recover under the pleadings upon which this case was tried. The policy provided:

"If an autopsy be made the association shall be given timely notice thereof and the right and opportunity for its representative to attend and participate."

And further:

"Strict compliance on the part of the insured and the beneficiary with all the provisions of this policy is a condition precedent to recovery."

In my opinion, both of these provisions of the policy are valid. They are not unreasonable; they contravene no statute, and cannot be said to be against public policy, and therefore void.

The undisputed testimony was to the effect that the deceased died on Friday, the 26th day of May, 1922. An autopsy was held on the following day, and that the insurance company did not receive any notice thereof until June 1st following, and had no knowledge thereof. I believe that when the appellant pleaded the provisions of this policy in bar of the plaintiff's cause of action in connection with an allegation that an autopsy had

been held and notice had not been given ·as required by the policy, it was then incumbent upon the appellee to allege and prove some fact or facts that would entitle her to recover notwithstanding her failure to give the insurance company timely notice of the autopsy and an opportunity to be present and participate therein; and it appearing from the record in this case that the matters pleaded by appellee in reply to appellant's plea in bar were not sustained, she should have alleged that notwithstanding her failure to comply with such provisions of the policy the insurance company was not injured as a result of such failure or breach of the contract; and in that connection, the facts as to why no injury was thereby sustained by the insurance company, and to follow such allegations by evidence showing that no injury was done the insurance company by reason of the beneficiary failing to comply with said provisions of such contract, before she was entitled to recover herein. This provision of the policy being a valid one, and another provision rendering same a condition precedent to recovery, the appellee was not entitled to a judgment under the record in this case unless she at least showed that notwithstanding her failure to comply with such provision, no injury or loss was sustained by the insurance company. Otherwise, such provision would be nugatory and valueless to the insurance company. In this connection, I call attention to the fact that the insurance company did not require by the provisions of its policy the right to have an autopsy made or exhume the dead for that purpose, but its policy simply provided that if such examination was made, it should be given timely notice thereof and the right to have a representative present and participate in the autopsy. What is there about such a provision in an accident insurance policy that would render it invalid? The very fact that the relatives of the ·deceased wanted and had an autopsy made shows that they were not satisfied as to the cause of his death. If those near and dear to him had reasons sufficient to cause this unusual thing to be done, then it seems that it was both proper and prudent for the insurance company to at least have a representative present when the autopsy was made, in order that it might be fully informed as to the cause of his death so far as the autopsy might show. This was a valuable right, and the appellee, by her conduct, denied it such right and benefit as it might have derived by having a representative present at the autopsy. The appellee contends that the case should be affirmed because the evidence shows that no harm was done appellant by reason of appellee's failure to comply with such provision of the insurance policy. Without passing upon the effect of the evidence in this case, it is sufficient to say that in the absence of any pleading by

appellee to the effect that no injury was suffered by the insurance company, this evidence is not available to appellee. Texas Banking & Ins. Co. v. Stone, 49 Tex. 4; Texas Fire Ins. Co. v. Knights of Tabor, 32 Tex. Civ. App. 328, 74 S. W. 809; Mosness v. Insurance Co., 50 Minn. 341, 52 N. W. 932; Joyce on Insurance, vol. 4, § 3674.

The question of the failure of appellee to plead some valid reason why notice was not ·given is not raised in appellant's brief, but it appears from the face of the record. It is fundamental in character, and is án error of such serious import that this court is not warranted in overlooking it.

The appellee, as beneficiary under such policy, under the facts of this case, was charged with full notice of all the terms and provisions of such policy. It appears from the testimony that this policy was in appellee's home, and in the hands of her mother, who was with appellee and her husband during his illness from the time of his fall in April until after his death and burial; that appellee was sitting up, and able to walk around by holding to something at the time of the death of her husband, and knew of the existence of such policy; that she in person placed said policy in the hands of an attorney a few hours after her husband's death, showing that she not only was able to but actually did attend to this important business matter. Klein v. New York Life Ins. Co., 104 U. S. 88, 26 L. Ed. 662; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Insurance Co. v. Lillard (Tex. Civ. App.) 174 S. W. 619; Joyce on Insurance, vol. 2, § 848.

The fact that appellee was convalescent from a protracted illness is no excuse in law for her failure to comply with the provisions of the policy. Brotherhood of Railroad Trainmen v. Dee, 101 Tex. 597, 111 S. W. 396; Woodmen v. Wagnon (Tex. Civ. App.) 164 S. W. 1083; Bost v. Supreme Council, 87 Minn. 417, 92 N. W. 337.

· The company is not estopped from asserting the hereinbefore mentioned defense to plaintiff's cause of action because it furnished blank proofs ·of death to her, for the reason that at the time the insurance company mailed such blanks to her, they were accompanied by a letter containing, among other statements, the following language:

"You will find herewith blanks to be executed, one by the beneficiary, one by the undertaker, one by the person or persons who witnessed the accident, and the other by the attending physician. * * * You will understand of course that the association, by sending these blanks, waives none of its rights, but on the contrary hereby expressly reserves the right to interpose any and all legal defenses it may have to Mrs. Melaun's claim, including any objections to the proofs furnished, either as to substance or form."

It is sufficient to say that the rule is well established in this state that where such

blanks are furnished with the express understanding that the company, in sending them, does not waive any of its rights, then a waiver did not occur, and consequently it is my opinion that the insurance company was not estopped from asserting the defense. Roberts v. Ins. Co., 19 Tex. Civ. App. 338, 48 S. W. 559; Insurance Co. v. Weeks Drug Co., 55 Tex. Civ. App. 263, 118 S. W. 1086; Security Ben. Ass'n v. Webster (Tex. Civ. App.) 230 S. W. 219; Loesch v. Casualty Co., 176 Mo. 654, 75 S. W. 621.

Appellant assigns error because the court, over objection, permitted the witnesses Clarence Green, Mrs. Martin, and appellee to testify to certain statements made by deceased shortly after his fall in April and immediately following his regaining consciousness. In my opinion, this testimony was properly admitted. It was part of the rest gestæ, and therefore the assignments relating to it should be overruled.

Appellee also assigns error upon the action of the court in permitting appellee, her mother, and her physician to testify, over objections, to appellee's physical condition, the effect of which was that she was recovering from childbirth delivered with instruments, followed by an operation, and that she was in a weak condition. I believe such testimony was immaterial and should not have been admitted.

It was error for the court to permit the witness Westerfelt to testify to a conversation and introduce in evidence a letter, over objections of defendant, to the effect that about a month after the autopsy he called upon the officers of defendant and offered to have the body exhumed and let them hold another autopsy, and of their refusal of the offer.

It was also error to permit the witness Westerfelt to testify, over objection, that he went to a doctor's office and asked him, in effect, if an autopsy held a month after death would show the same things as one held the day after death; that the doctor replied that he did not know, but believed it would, and that he would call Dr. Tompkins up and secure his views upon the matter. Such testimony was hearsay, irrelevant, and immaterial.

I believe it was also error to permit the witness Westerfelt to testify over objection, that the general attorney and other representatives of defendant, 30 or 40 days after the burial of deceased, refused an offer to hold an autopsy upon the body of deceased; this evidence being immaterial.

There are some expressions in the majority opinion in their findings of fact to which I do not agree. The testimony as to what caused the deceased to fall is far from satisfactory, and there is about as much reason to believe that his fall was produced by a diseased condition as there is that he fell because he slipped upon a wet floor. In the majority opinion it is said:

"There is no evidence that the appellee was consulted about said autopsy or that she knew anything about it until after it was done."

It might also be said that there is no testimony even indicating that she was not fully aware of the autopsy and did not acquiesce therein. In this connection Mrs. Melaun testified:

"I was weak. I had had an operation. I was able to be up, was not able to do any housework. I knew my husband had a policy with the defendant. I learned that the policy was valid and binding after I called Mr. Westerfelt and we were looking for some papers. My husband died on Friday at 10:30. Mr. Westerfelt came out and took charge of the papers on Saturday."

The autopsy was conducted by the appellee's family physician, and in the absence of any testimony even tending to show that she did not know of and acquiesce in an autopsy being made, it ought to be presumed that she did acquiesce therein. In my opinion, it is of little importance what her physical condition was; she was bound by the provisions of this insurance policy; but the record fails to show that her condition was such that she did not know of the policy. She testified that she did know of it, and it appears that before her husband had been dead 24 hours she had an attorney call upon her and delivered him the insurance policy and talked to him about same, and therefore I cannot agree to that expression in the majority opinion as follows:

"At the time of her husband's death she was not able physically or mentally to do anything, and continued in such condition for some time after her husband's death."

In my opinion, the judgment of the trial court should be reversed and the case remanded.