[L. A. No. 18178. In Bank. Apr. 30, 1942.]

HARRY C. ELLS et al., Respondents, v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA (a Fraternal Beneficial Order), Appellant.

Newlin & Ashburn and Paul Sandmeyer for Appellant.

Thomas P. Walker and Alfred R. Meyers for Respondents.

CURTIS, J.—This is an appeal from a judgment in favor of respondents in an action to recover death benefits under

an insurance certificate issued by the appellant fraternal beneficial order.

On January 2, 1914 appellant issued an insurance certificate to James Fisk Ells, respondents' father, which provided that he was accepted as an insured member under "Class A" and as such entitled to all the rights and benefits provided in the constitution of appellant for such insured members. The certificate contained the following provision: "This Certificate, the Constitution, By-laws and Articles of Incorporation of said Order, together with the application for insurance . . . shall constitute the contract . . . and shall govern the payment of benefits." Under the constitution, "Class A" insured members were to be indemnified against the results of bodily injury or death caused by accidental means. On April 2, 1939, the insured accidentally fell in the bathroom of his home and sustained injuries which resulted in his death on April 4, 1939. At the time of his death he was in good standing, having paid all dues, assessments and other charges called for under the terms of the insurance certificate from its date of issuance up to the time of his death, a period of over 25 years. On April 5, 1939, an autopsy was performed upon the body of the insured by the autopsy surgeon of the county of Los Angeles at the request of the county coroner, which revealed that death was caused by contusion of the right lung with traumatic pneumonia. The autopsy was performed without the knowledge of respondents or either of them. On the same day, but following the post mortem examination, A. J. Loeslein, secretary-treasurer of Los Angeles Council No. 82, the local council of appellant, was informed by respondents of the facts concerning the autopsy and of their intention to have the body cremated on the following day. No other notice of the autopsy or cremation was given to the appellant. On April 6, 1939, with the express permission of Loeslein, the body of the insured member was cremated. Respondents, as beneficiaries under the insurance certificate, submitted a claim for the death benefits, which was rejected by appellant on the ground that the right to the death benefits was forfeited by respondents' failure to give the manager of appellant's claim department 72 hours' notice of the intended autopsy and cremation as required by the constitution.

Preliminary to the discussion of the questions involved herein, it might be well to refer to the evidence that the local

lodge had given Mrs. Barnes permission to have the body cremated immediately following the funeral. The constitution of the appellant, which we have seen was made a part of the contract of insurance, expressly provides that no officer of a subordinate lodge shall have power to waive any provision of the "constitution of the order relating to insurance" and that no knowledge or information obtained by any member of the local organization shall be construed as "knowledge or notice to the order." These provisions of the constitution incorporated in the terms of the insurance certificate are held to be binding upon the insured (*Marshall* v. *Grand Lodge A. O. U. W.*, 133 Cal. 686 [66 Pac. 25]; *Valentine* v. *Head Camp, P. J., W. O. W.*, 180 Cal. 192 [180 Pac. 2, 8 A. L. R. 380]), and the insured is charged with full knowledge of these provisions of the constitution. (*Valentine* v. *Head Camp, P. J., W. O. W., supra; Supreme Lodge* v. *Price*, 27 Cal. App. 607 [150 Pac. 803].)

The basis of these decisions is that since the *insured* is a party to the contract of insurance, he is charged with knowledge of all its terms, including the constitution of the order, as the latter was made a part of the contract. However, we wish to add at this time that these cases are of doubtful authority in determining whether the *beneficiaries* named in the insurance certificate but not parties to the contract are charged with knowledge of its terms.

It might be further said that the trial court did not base its decision upon any alleged waiver by the secretary of the local lodge, as it appears from its remarks in ruling upon a motion to strike out the evidence of waiver. In ruling upon that motion it stated: "Because Mr. Loeslein [the secretary] says 'go ahead and do something' that it is O. K. with him, that certainly does not bind the company from that standpoint."

We are not, therefore, basing our decision of any question involved herein on any asserted waiver of the terms of the insurance certificate by any act of the secretary or other officer of the local lodge.

 Appellant first contends that respondents' claim for death benefits was forfeited and rendered null and void by the failure of respondents to notify the manager of the claim department of the appellant 72 hours before said autopsy was held that said autopsy was to be held. As noted above,

the insurance certificate issued to the insured makes the constitution of appellant a part of the contract between the insured and the appellant. Article XV, section 21 of this constitution reads in part as follows: ''Any claim for death alleged to have been caused by accident shall be forfeited and rendered null and void should an autopsy not requested by the Supreme Executive Committee, or any representative authorized by it, be held without notice thereof being first given to the Manager of Claim Department at least seventy-two (72) hours in advance of the intended autopsy. Any claim for death alleged to have been caused by accidental means shall also be forfeited and rendered null and void should the remains be cremated without first giving notice thereof to the Manager of Claim Department at least seventy-two (72) hours in advance of the intended cremation.''

It will be noted that the above provision of the constitution expressly excepts autopsies ''requested by the Supreme Executive Committee'' from the requirement of the 72 hours prior notice, and appellant insists that the expression of one exception excludes all others. Accordingly, it contends that any autopsy on the body of a deceased member, even when performed by public officials without the knowledge of the beneficiary named in the certificate, works a forfeiture of the insurance and renders any claim thereunder null and void unless the beneficiary gives the 72 hours' notice as provided in the constitution. Such a construction of this section would appear to be extremely harsh and of the strictest character. It might be well to call attention to the fact that appellant, as appears from its name, is a ''fraternal beneficial order'' and that one of its objects, as appears from its constitution, is ''To give all moral and material aid in its power to its members and those dependent upon them, also to assist the widows and orphans of deceased members.'' ▇▇ The rules and regulations of such an order are not given the strict and rigid construction applied to the interpretation of ordinary contracts of insurance. In the case of *Journeymen Butchers' Association* v. *Bristol*, 17 Cal. App. 576 [120 Pac. 787], the principle was announced at page 578 in the following language: ''As before stated, the object of a society of this kind is to assist and benefit the families and heirs of deceased members; and courts are bound to construe its rules and regulations liberally to effect the benevolent purposes of the order.

(3 Am. & Eng. Ency. of Law, 1067; Niblack, §§ 160-175; *Keener* v. *Grand Lodge*, 38 Mo. App. [543] 553.)''

Niblack on Benefit Societies and Accident Insurance states in section 17, page 32: ''The by-laws of mutual benefit societies should be construed liberally, and with a view to effectuate the benevolent purposes of their organization.'' The same author further states in section 23, page 44: ''. . . their by-laws must be reasonable, and all which are vexatious, unequal, oppressive, or manifestly detrimental to the interests of the corporation, are void.''

However, aside from the rule announced in these authorities, it appears in this case that the autopsy was performed by the county coroner without the consent or even the knowledge of either of the beneficiaries. The rule is well settled that a provision in a policy of insurance requiring that notice of the holding of an autopsy be given to the insurer applies only to unofficial autopsies, and does not require the beneficiary to give notice of an autopsy made by public officials under statutory authority. (8 Couch, Cyclopedia of Insurance Law, § 1958, p. 6506; *O'Brion* v. *Columbian Nat. Life Ins. Co.*, 119 Me. 94 [109 Atl. 379]; *International Travelers' Assn.* v. *Melaun* (Tex. Civ. App.), 270 S. W. 246; *Loesch* v. *Union Casualty & Surety Co.*, 176 Mo. 654 [75 S. W. 621].)

In the case of *O'Brion* v. *Columbian Nat. Life Ins. Co.*, *supra*, in an action to recover on an insurance policy containing a clause which required notice to the company of a proposed autopsy, the court held that where the autopsy was performed by public officials, no notice of the autopsy was required to be given to the insurer. In so holding the court at page 98 stated: ''The autopsy contemplated by that provision is unofficial—one made at the instigation of the beneficiary—and then it is only fair, as prescribed, that seasonable notice thereof be given to the company. Here however no autopsy was made at the instigation of the beneficiary or at her request. . . . She had no part in the proceedings. The brother was wholly responsible therefor, and therefore no notice could be given by her.''

In *Loesch* v. *Union Casualty & Surety Co.*, *supra*, recovery was sought under an insurance policy containing a like clause requiring notice to the insurer in case an autopsy was performed. The court sustained a judgment in favor of the beneficiary and in so doing stated at page 667: ''It is a

reasonable requirement, under reasonable interpretation, and a violation of its terms under circumstances reasonably showing disadvantage to the company, would work a forfeiture of the policy. But there is nothing in this case to indicate any such disadvantage. In the first place, it is very doubtful if the plaintiff was responsible for the act. If it occurred without her knowledge or consent it would be no defense to the suit. She testified that she did not know what the word meant and did not know what the physicians were doing.''

In the case of *International Travelers' Assn.* v. *Melaun, supra,* the court stated at page 249: ''The latter part of clause 8 copied above, 'and if an autopsy be made, the association shall be given timely notice thereof and the right and opportunity for its representative to attend and participate,' evidently means that if any autopsy is made with the consent of the surviving wife, and especially when she is the sole beneficiary named in the policy.'' The court further stated at page 249: ''If it was the intention of the company, as seems to be expressed in said clause, and as is urged by appellant, that the rights of the surviving wife and beneficiary should be swept away by the unauthorized act of a third party in ordering an autopsy without her consent, then said clause, so construed, would be wholly void and unenforceable.''

These authorities appear to refute appellant's contention that the claim of respondents was forfeited by reason of respondents' failure to give appellant notice of the holding of the autopsy.

Appellant relies upon a number of authorities in support of its contention that respondents are barred from recovering upon said insurance certificate by reason of the clause contained therein (requiring notice to be given to the insurer 72 hours before any autopsy is made upon the body of the insured). The principal authority so relied upon by appellant is the case of *Sheehan* v. *Commercial Travelers etc. Assn.,* 283 Mass. 543 [186 N. E. 627, 88 A. L. R. 975]. That case may readily be distinguished from the instant action. In that case the clause in the policy of insurance respecting notice of autopsy provided that the insurer should have the right ''to be present in any case at an autopsy performed on the body of a member *under the direction of a public officer,* or by the authority or consent of his beneficiary or family.'' (Italics ours.) In that case the insurance was made payable to the insured's estate. He left no wife, but evidently left a sister.

On page 554 it is stated: "If the insured in this case left no wife and the sister, to whom reference is made in the record, was his nearest kin, the plaintiff, to establish that the autopsy, if made as testified to, was not within the terms of the policy, was required to prove that it was not performed by the authority or consent of the sister. The evidence reported did not justify this conclusion . . ."

It will be noted in the first place that the policy of insurance in that case provided for notice of an autopsy performed *"under the direction of a public officer."* (Italics ours.) No such provision is to be found in the insurance certificate involved in this case. However, it does not appear that the court in that case was greatly concerned with that provision of the policy. The decision seems to be based upon the conclusion that the evidence failed to show that the autopsy was performed without the authority or consent of the sister who was the insured's nearest relative. In the case now before us there is evidence, and the trial court found, that the beneficiaries did not authorize nor consent to the autopsy and that they knew nothing of the autopsy until after it had been performed. This factual situation in the two cases destroys the Sheehan case as an authority in favor of appellant. On the other hand, we think its decision may well be considered favorable to respondents. The court clearly intimates that had the autopsy been performed without the knowledge or consent of the sister, the nearest relative of the insured, the defense of failure to give notice of the autopsy to the insurer would not have been a defense to the action on the policy.

The other cases relied upon by appellant are *Howes* v. *U. S. Fidelity & Guaranty Co.*, 73 F. (2d) 611; *Maryland Casualty Co.* v. *Harris*, 60 F. (2d) 810; *Clay* v. *Aetna Life Ins. Co.*, 53 F. (2d) 689; *Standard Accident Ins. Co.* v. *Rossi*, 35 F. (2d) 667; *Hurley* v. *Metropolitan Life Ins. Co.*, 296 Mass. 130 [5 N. E. (2d) 16] ; and *Dvorkin* v. *Commercial Travelers' Mutual Accident Assn.*, 283 N. Y. 629 [28 N. E. (2d) 34]. In these cases the policy or insurance certificate contained a provision in respect to an autopsy similar to that contained in the insurance certificate in the instant action, and in each of these cases a demand was made for an autopsy by the insurance company and refused by the beneficiary. It was held that on account of such refusal no recovery could be had on the policy or certificate. It is apparent that these

cases are not controlling in a case like that now before us where the autopsy was performed without the consent or knowledge of either of the beneficiaries and no opportunity was given to either of them to notify appellant before the autopsy was performed.

We are satisfied that the great weight of authority both in this state and elsewhere sustains the position of the respondents that the provision in a policy or insurance certificate respecting a claim for death and rendering it null and void in case an autopsy not requested by the insurer be held without previous notice to the manager of the claim department of the insurer, has no application to an autopsy performed by a public official without the knowledge or consent of the beneficiaries.

We might also refer to a case against this same appellant, entitled *Gibbs* v. *United Commercial Travelers of America*, 14 Ohio App. 439. In that case the contract of insurance provided for a seven day notice if an autopsy, not requested by the supreme executive committee or any representative authorized by it, were held. The case was decided upon the pleadings. As a defense the insurer alleged that an autopsy was held and no notice thereof was given to it by the plaintiff. Plaintiff replied admitting this allegation, but alleged that she did not know of any such provision until after the autopsy had been held. The trial court sustained a demurrer to this reply. The appellate court reversed the judgment on other grounds but further held at page 455 respecting said forfeiture provision "that the terms and conditions in the policy with reference to an autopsy are unreasonable and unwarranted, and that forfeiture of the policy cannot be declared for failure to give such notice." There is nothing to indicate the basis of the court's decision, whether the court declared this provision of the policy unenforceable upon the ground that the length of time specified therein was unreasonable, or upon the ground that the beneficiary had no knowledge of the insurance until after the autopsy was held. The court was particular to call attention to the fact that the beneficiary had no knowledge of the insurance until after the autopsy was performed. After this decision the appellant changed its contract of insurance so as to provide for the 72 hours' notice, but so far as we are advised, no court has passed upon the reasonableness or validity of its insurance contract as so modified.

Appellant further contends that the cremation of the body of the insured without giving notice thereof as provided by the terms of the insurance certificate worked a forfeiture of respondents' claim and rendered it null and void. As stated above, the insurance certificate issued by the appellant to the insured, James Fisk Ells, made the constitution of said order a part of the contract of insurance between the insurer and the insured. We have hereinbefore set out a copy of the provision of the constitution which provides that any death claim under said certificate shall be forfeited and rendered null and void should the remains be cremated without first giving notice thereof to the manager of the claims department of the insurer at least 72 hours in advance of the intended cremation. It is admitted that the body of Mr. Ells was cremated two days after his death and that no notice of the intended cremation was in fact given to the manager of said claims department. It was satisfactorily established at the trial that the beneficiaries knew nothing of this provision in the insurance certificate until after the body had been cremated.

In support of its contention, appellant cites the cases of *Howes* v. *U. S. Fidelity & Guaranty Co., supra; Clay* v. *Aetna Life Ins. Co., supra; Standard Accident Ins. Co.* v. *Rossi, supra,* and *Dvorkin* v. *Commercial Travelers' Mutual Accident Assn., supra.*

The facts in each of these cases show that the policy of insurance which was the subject of each action contained a provision giving the insurer the right to demand an autopsy on the body of the deceased. In each of these cases it was shown that an autopsy was demanded but refused by the beneficiary, and it was generally held in these cases that the refusal of the *beneficiary* to consent to an autopsy reasonably and seasonably demanded was a breach of the contract, defeating the right of the beneficiary to recover on the policy of insurance. In each of these cases the beneficiary knew of the provision in the policy of insurance providing for an autopsy, at the time of the refusal to permit the insurance company to perform the same, and deliberately denied the company this right given it by the contract of insurance. By this breach of the contract on the part of the beneficiary, the latter was denied recovery, provided the demand for an autopsy was reasonably and seasonably made.

The distinction between those cases and the instant action

is that the beneficiary, in each of those cases wherein the judgment was adverse to the beneficiary, knowing of a material provision in the contract, deliberately refused to comply with it. In the case now before us, the beneficiaries without any knowledge of the requirements of the policy that notice be given to the appellant of their intention to cremate the body of the deceased, innocently had the body cremated after the funeral and without any previous notice to the appellant.

The industry of counsel in this action has failed to discover any case (with one exception) bearing directly upon the question presented by the facts of this case. We have been equally unsuccessful. The exceptional case is another action against the present appellant, entitled *Kroner* v. *United Commercial Travelers*, 176 Wis. 151 [184 N. W. 1037]. In that case it appears that an insurance certificate was issued containing a clause forfeiting the policy in case of cremation without first giving seven days' notice to the company. The body of the deceased member of the order was cremated two days after his death. Plaintiff, the wife of the deceased, had no knowledge of the existence of the insurance until after cremation. The trial court held ". . . that under the evidence and facts as found in this case it is unreasonable to declare and to enforce a forfeiture of the plaintiff's claims under the insurance certificate on the ground that the body was cremated without first giving notice; that the beneficiary was excused from giving such notice; and that as to the plaintiff, under the facts and circumstances shown in this case, the provision as to cremation in said certificate is inapplicable, null, and void." The Supreme Court of Wisconsin affirmed the judgment of the trial court, but by a divided court. The court consisted of seven members, one of whom was disqualified and did not participate in its decision. Of the other members, three favored the affirmance and three a reversal of the judgment. The rule of the court required an affirmance of the judgment and it was so declared. While that case, on account of the even division of the court, may lose much of the weight to which it would be entitled had there been a majority of the court in favor of the affirmance of the judgment, nevertheless it cannot be ignored as a decision of the highest court of a sister state holding that it was unreasonable to enforce a forfeiture of an insurance certificate on the ground that the body was cremated without the beneficiary

first giving notice as required by the insurance certificate, in the absence of knowledge on the part of the beneficiary of such requirement.

The only difference between that case and the instant action is that the insurance certificate before the Wisconsin court provided for a seven day notice while the one issued to Mr. Ells required a three day notice, but in each case the body was cremated two days after death. As stated above, appellant has changed its insurance certificate so as to provide for the 72 hours' notice. As we read this decision, it is not based upon the unreasonable length of time required to be given by the beneficiary before the body could be cremated, as cremation took place two days after death, but the court was of the opinion that it was unreasonable to enforce the forfeiture for failure to give the required notice as to the plaintiff under the facts of the case. These facts were that the beneficiary (plaintiff) had no knowledge of the existence of the insurance, and therefore knew nothing of the forfeiture clause in the policy. It was further held by said court that the beneficiary was excused from giving notice. The only possible reason the court should so hold, it seems to us, would be predicated upon the fact that the beneficiary had no knowledge of the insurance until after the body was cremated.

It is apparent in the case before us that the appellant seeks to enforce the forfeiture clause in the insurance certificate respecting cremation of the body of the deceased without notice to the appellant. ▆▆ It is well settled in this state as well as in other jurisdictions that forfeitures are not favored by either courts of law or equity. 12 Cal. Jur., section 3, page 634, states: "statutes and contracts are construed strictly against forfeitures or as liberally as possible to prevent them." This rule against forfeitures is so well established that further citation of authority is, we think, unnecessary.

▆▆ In the case of *International Travelers' Association* v. *Melaun, supra,* respecting a clause in an insurance certificate requiring that notice of an autopsy be given to the insurer as recited in a previous portion of this opinion, it was said that such a clause would be wholly void and unenforceable if construed to apply to an autopsy by the act of an unauthorized third party without the consent of the beneficiary. It seems equally unreasonable to hold that a clause in an insurance certificate providing for a forfeiture of all claims thereunder

if the body of the insured is cremated without notice to the insurer, is applicable in a case like that before us, where the beneficiaries had no knowledge of such a provision in the insurance certificate and had the body of the deceased cremated two days after his death without giving the insurer any notice of their intention to do so. In the Melaun case the court held that the forfeiture clause in the policy there involved was void and unenforceable, as under the facts in that case, to construe it as the insurer contended, the rights of the wife and beneficiary would be swept away by the unauthorized act of a third party. There is a marked similarity between the contention made by the insurer in that case and the present contention of the appellant. If it was the contention of the insurer, as now argued by appellant, that the cremation of the body of the insured under the circumstances should in this case work a forfeiture of the insurance, the rights of the beneficiaries would be swept away by their innocent and unintentional violation of one of the terms of the insurance certificate of which they had no notice or knowledge. In the Melaun case it was held that to construe the policy as contended by the company would render it wholly void and unenforceable. We are of the opinion that the same conclusion should govern in the present case.

We are not unmindful of the importance nor of the necessity to the insurer of a forfeiture clause in the insurance certificate, nor of the reasonableness of a proper requirement that notice be given to the insurer of an intention to cremate the body of the insured, in order that the insurer may if it deem it necessary have an autopsy held, or other examination of the body of the insured made prior to cremation. But to enforce this forfeiture against the beneficiary without either actual or constructive notice to him of its existence as an integral part of the insurance certificate is contrary to every principle of equity and fair dealing. This does not, however, leave the insurer without the means of properly protecting itself against a hasty cremation of the body without reasonable notice to it. If the beneficiary had knowledge of said clause and deliberately violated its requirements, the insurer would not be liable for the payment of any claim under the insurance certificate. It does not seem to be an unreasonable burden cast upon the insurer, if it intends to hold beneficiaries to this provision of the insurance certificate, to require it to notify them of such provision. The insurer has

the names and addresses of all beneficiaries and it would be a simple matter for the insurer, when a certificate is issued, or the name of a beneficiary is changed, to notify the beneficiary of those provisions of the contract of insurance, the violation of which by the beneficiary would work a forfeiture of any claim under the contract. The contention of appellant that the respondents herein forfeited all rights under the insurance certificate issued to their father cannot be sustained.

Finally the appellant contends that respondents failed to prove that the death of the deceased was caused by external, violent, and accidental means alone and independent of all other causes. The evidence shows that the deceased was 78 years of age, that on April 2, 1939, and for some time prior thereto he had enjoyed good health and did work around the garden and home. Mrs. Barnes and the deceased lived together in a small house. They had been visiting with some friends who had called to see them. When the friends left, the deceased went to the bath room which was but a few feet from where Mrs. Barnes was sitting at the time. A moment after he entered the bath room, Mrs. Barnes heard the door slam, the gas heater "scratch" across the floor of the bath room, and immediately the sound of a falling body. She immediately went to the bath room and found her father lying on the floor by the side of the gas heater. The gas heater was connected to the wall by a small rubber hose. It was not in its accustomed place near the wall but was out in the room a foot or a foot and a half from the wall. The deceased was fully conscious at that time and said to her: "Don't get excited. I am all right." She moved a little stool in the bath room over to her father and he put his hands on the rounds and got up. He was put to bed. Dr. Alsberg was called that evening, examined him and prescribed medicine for him to take. The next day he suffered considerable pain and Mrs. Barnes tried two or three times to call Dr. Alsberg but he was busy. She phoned another doctor who said he would call at noon. The patient died at 11 o'clock before the doctor arrived. This was on April 4, two days after his fall in the bath room. As stated above, an autopsy was performed on the body of the deceased the next day. The autopsy surgeon testified, after describing the condition of the body of the deceased and certain bruises found on the body: "That means altogether that there were two bruises, one on the forehead, and one on the chest at the level of the seventh rib on the inside, and there was pus in the

right lung on that same side, and that there were also some natural conditions including nephritis of the kidneys and congestion of the liver."

The doctor stated that in his opinion the cause of his death was contusion of the right lung with traumatic pneumonia; that the cause of the traumatic pneumonia was a contusion of the right lung, and that it was an external injury. In answer to a request that he explain what was meant by traumatic pneumonia, the doctor stated: "It is a classification of pneumonia where an injury causes the pneumonia." The doctor on cross examination testified that the deceased had chronic nephritis (inflammation of the kidneys) but that he did not consider this ailment sufficiently severe to be a contributing cause of the death of the insured.

The constitution of appellant, which we have seen was made a part of the contract of insurance issued by the order to the deceased, protected and indemnified the insured "against the results of bodily injured ... effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes." The burden was on the respondents to establish as a part of their case that death resulted from an accident, as defined by the terms of the contract of insurance, and it was not incumbent on the appellant to prove that death was not caused by accident. (*Rock* v. *Travelers Ins. Co.*, 172 Cal. 462 [156 Pac. 1029, L. R. A. 1916 E, 1196].)

That the deceased met his death by reason of the fall in the bath room we think is satisfactorily established by the evidence in the case. Whether the deceased tripped on the rubber hose or stumbled against the gas heater, or for any other reason fell to the floor of the bath room, he sustained an injury by reason of the fall which in the opinion of the doctor was the cause of his death. The injury was external in origin and independent of all other causes was the cause of his death. The evidence clearly and definitely brings the cause of his death within the provision of the insurance certificate which insured the deceased "against the results of bodily injury ... effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes."

In the case of *Preferred Acc. Ins. Co.* v. *Fielding*, 35 Colo. 19 [83 Pac. 1013, 9 Ann. Cas. 916], the court stated at page 22: "When death by unexplained violent external means is established. The law does not presume suicide or murder; it

does not presume that injuries are inflicted intentionally by the deceased, or by some third person; and hence, with the proof indicated, by reason of the presumption which attaches against self-destruction or the violation of the law, *prima facie* proof is also made of the fact that the injuries were accidental without direct or positive testimony on that point.''

In the case of *Losleben* v. *California State Life Ins. Co.*, 119 Cal. App. 556 [6 P. (2d) 1012], the court stated at page 562: ''. . . this evidence of a man in normal health suddenly stricken, with the evidence that the condition in which he was found could have been caused by a jolt or sudden strain, taken in connection with the place and circumstances in which he was working, with the absence of the only things that could be expected to have caused his condition, and with the natural inferences and presumptions that may be drawn from the evidence introduced, was sufficient to make out a *prima facie* case, and that the motion for a nonsuit should have been denied. Nor is the result different because the deceased may have been injured while doing something he intended to do, such as jumping from the bench. While he may have intended to jump from the bench, he may have slipped and fallen while so doing, and it can hardly be presumed that such slipping or falling was an intentional act.''

It is appellant's position that while the insured may have met his death as a result of an accident, yet the evidence fails to show that his death ''was effected by accidental means.'' Probably as clear and concise an exposition of the meaning of an injury ''effected by accidental means'' as may be found in any of our reports is contained in the syllabus of the decision in the case of *Rock* v. *Travelers' Insurance Co., supra,* which reads as follows: ''Under a policy insuring against death or injuries effected by 'accidental means,' it is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the death or injury.'' The preceding act or occurrence which led to the death of the insured in the instant case was his fall upon the bath room floor, which, it must be conceded, was most unexpected. In the Rock case the death of the insured resulted from the exertion by him in carrying a heavy casket down a flight of stairs. It was held that his death was not effected

by accidental means. The court stated at page 468: "In carrying it down he did not slip or stumble nor did the casket fall against him. The entire operation was carried out in precisely the manner intended and designed by Rock."

The instant case presents an entirely different situation from the Rock case, as the evidence before us clearly shows that the preceding act which led to the injury and death of the insured was entirely unexpected.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied May 28, 1942.