## COCHRAN v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

### No. 2846.

Circuit Court of Appeals, Tenth Circuit.

May 25, 1944.

homa Tax Comm., 188 Okl. 366, 109 P. 2d 504; Michigan Allied Dairy Ass'n v. Auditor Gen., 302 Mich. 643, 5 N.W.2d 516-518.

William G. Davisson, of Ardmore, Okl., for appellant.

E. W. Dillon, of Columbus, Ohio (J. E. Williams and E. H. Williams, both of Ardmore, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves the liability of the Order of the United Commercial Travelers of America under a fraternal life insurance policy issued by it to Marvin L. Cochran, covering death by external, violent and accidental means independent of all other causes. The specific question is whether the insurer has, in the circumstances, waived or is estopped to assert a forfeiture of a claim for death benefits because an autopsy was performed on the insured without notice to the insurer, as required by a provision of the contract.

The question is presented here on stipulation of facts and the findings of the trial court, which are fairly supported by the evidence and may be narrated as follows: The appellee is a ritualistic fraternal association, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and is engaged in the issuance of insurance certificates on the life and limb of its members, through the maintenance of a lodge system. The Order is comprised of a Supreme Council at Columbus, Ohio, with Local Councils, or Lodges throughout the United States, one of which is located at Ardmore, Oklahoma.

The Supreme Council is governed by an Executive Committee, the duty of which is to examine all claims of its members referred to it by the Manager of the Claim Department, and to determine who is entitled to benefits and the amount thereof. It is the duty of the Manager of the Claim Department at Columbus, Ohio, to examine all claims arising through or under any certificate of insurance issued by the Order; to decide upon their validity and, if possible, to settle and adjust the same, and if he deems necessary to refer the same to the Supreme Executive Committee for instructions. Each Local Council, composed of local lodge members, is governed by an Executive Committee with a secretary and treasurer, whose duty it is to call meetings of the Executive Committee "to discuss and investigate claims filed with him; to see that all information required of himself and claimants on blanks for proof of claims is properly given and to see that the same are properly completed, signed and sworn to and * * * forward same immediately to the Manager of the Claim Department without recommendation". The constitution, bylaws and articles of incorporation, as changed or amended from time to time, are expressly incorporated in and made a part of the certificate of insurance, which is the contract between the Order and the insured member. They measure the coverage under the certificate and the extent and manner of payment of benefits provided thereunder.

On December 4, 1916, the Order issued and delivered to Marvin L. Cochran of Ardmore, Oklahoma, its certificate of in-

surance which, according to the constitution and by-laws, provided for certain stipulated benefits in the event of disability resulting from accident, and certain benefits to the beneficiaries of the insured member in the event of death effected through external, violent and accidental means independent of all other causes. The contract further provided that notice in writing of an accident must be given to the Manager of the Claim Department within thirty days after the accident unless it was not reasonably possible to do so. If death resulted from an accident, notice of which had already been given, additional notice, in writing, of death must be given to the Manager of the Claim Department within thirty days after the death. The furnishing of the required notices, preliminary proofs, or final proofs was a condition precedent to recovery and failure to furnish the required notices, preliminary proofs or final proofs within the time limit therefor, forfeited any and all claims against the Order. It was also specifically provided that "any claim for death alleged to have been caused by accident shall be forfeited and rendered null and void should an autopsy not requested by the Supreme Executive Committee, or any representative authorized by it, be held without notice thereof being first given to the Manager of the Claim Department at least seventy-two hours in advance of intended autopsy". No grand or subordinate council, officer, member or agent thereof was authorized or permitted to waive any of the foregoing provisions of the constitution and by-laws as contained in the insurance contract.

The insured sustained a head injury in his place of business at Ardmore, Oklahoma on June 3, 1941. On the following July 10th, the wife and beneficiary made an oral report of the accident to W. H. Batis, who for twenty-five years had been the Secretary and Treasurer of the insurer's Local Lodge at Ardmore, and who had during this period accepted all notices of accidents and deaths, and claims for accident and death benefits. As was his custom, Batis communicated the information concerning the accident to the home office in Ohio, pursuant to which appropriate forms for notice of accident and claim of benefits were furnished to the insured, which were executed by the son of the insured, witnessed by Batis, and on July 15, 1941, mailed to Mr. Stratmann, Manager of the Claim Department, Columbus, Ohio.

Meanwhile, the condition of the insured became progressively worse, and he was removed to the Scott-White Hospital at Temple, Texas, where he died on July 18, 1941, at 10:05 P.M. The doctors were not certain of the exact cause of death, and asked permission of his wife to perform an autopsy, telling her that it might be of benefit "to someone else later on". Whereupon the wife immediately called her son in Ardmore, telling him of insured's death, and of the doctors' wish to perform an autopsy, and he told her to delay the autopsy until he had contacted the agents and representatives of insurance companies, who had a right to have a representative present if they desired; and that if any of the companies objected, he would so inform the Hospital by one o'clock in the morning. The son immediately contacted agents and representatives of interested companies, among whom was Mr. Batis. He advised Mr. Batis of his father's death, and the desire of the Hospital to perform an autopsy; that he had advised the Hospital it would "be all right" to perform the autopsy if there was no objection from the insurance companies. He requested Mr. Batis to call the proper official at the company's home office in Ohio and advise him of the intended autopsy, and ascertain whether or not it had any objections, and if so to get in touch with him or the Hospital at Temple, Texas, immediately. This Mr. Batis agreed to do, and about thirty minutes later called the son, telling him he had talked with Mr. Stratmann, Manager of the Claim Department of the insurer at Columbus, Ohio, and that if the company had any objections, Mr. Stratmann would communicate directly with the son or the Hospital. Batis did not call Stratmann in accordance with his representations to the son, and Stratmann did not know of the death of insured until the next day when he received a wire from Batis informing him of the death and requesting instructions.

After the death of the insured, the insurer made an investigation of the facts surrounding his death, and at that time learned that an autopsy had been performed. Thereafter, the insured filed a final claim for death benefits on forms prescribed and furnished by the insurer, and also submitted the autopsy report at

the request of the insurer. On October 1, 1941, the insurer denied liability for the death of insured, and this suit was brought in the state court to collect the death benefits provided in the policy. The case was timely removed to Federal Court upon diversity of citizenship and requisite amount in controversy; issues were joined and the case was tried on two defenses interposed by the insurer: (1) that death did not result by accidental means, independent of all other causes, and (2) forfeiture of all rights by failure to notify insurer of the performance of the intended autopsy at least seventy-two hours before its performance.

The report of the autopsy was attached to and made a part of the stipulation of facts, and on the trial of the case, plaintiff made reference to the report as a part of a hypothetical question touching the cause of death. The defendant likewise referred to the report as a part of its case tending to show that death did not result from accidental means within the coverage of the policy. The deposition of the doctor who performed the autopsy was "taken at the instance of the defendant", and by it introduced in evidence in support of its contention that death did not result solely from accidental means. The issue of accidental death within the coverage of the policy was submitted to a jury by appropriate interrogatory, and the jury found that death was caused solely by accidental means, leaving the issue of forfeiture to the trial court by express agreement of the parties. The trial court approved the verdict of the jury on the question of coverage, but decreed a forfeiture of the policy on the grounds that the beneficiary had not given notice of the intended autopsy as required in the policy, and that the evidence was insufficient to constitute a waiver or to estop the insurer from asserting the forfeiture.

On appeal, the beneficiary complains only of that part of the judgment decreeing a forfeiture. The insurer did not complain of any part of the judgment below, however by a statement of points relied upon to sustain the judgment of the trial court, it has challenged the sufficiency of the evidence to sustain the verdict of the jury on the vital issue of accidental death, and has designated the evidence pertaining to the cause of death as a part of the record on appeal. It has also devoted much of its brief to a discussion of this point, but the issue was submitted to the jury on sharply conflicting evidence, and by it resolved in favor of coverage under the policy. The verdict was approved by the trial court, and it is binding and conclusive on appeal.

It follows, as the trial court held, that appellant is entitled to recover the proceeds of the policy unless she has forfeited her right thereto by consenting to the performance of an autopsy upon insured without notice to the Manager of the Claim Department at Columbus, Ohio, at least seventy-two hours before its performance. This provision in the policy is for the protection of the insurer against fraudulent or unmeritorious claims; is admittedly valid and is a condition precedent which bars recovery unless under these facts and circumstances the insurer has waived or is estopped to declare a forfeiture under it. The courts will not make a new contract for the parties, but the provisions pertaining to forfeiture should be liberally construed in favor of the defaulting party and whether the principles of waiver or estoppel will operate to stay the hand of forfeiture depends upon the peculiar facts in each case. Insurance Co. v. Norton, 96 U.S. 234, 242, 24 L.Ed. 689. It is a familiar rule of law that an insurance company may by its conduct waive its right to claim a forfeiture under a provision inserted in an insurance policy for its protection, and it is not necessary that the waiver be an expressed relinquishment of the known right, but it may be a legitimate deduction from the acts and conduct of the party. Insurance Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 841; Liverpool & London & Globe Ins. Co. v. Cargill, 44 Okl. 735, 145 P. 1134; Pacific Mutual Life Ins. Co. v. McDowell, 42 Okl. 300, 141 P. 273, L.R.A. 1918E, 391; Knights of the Maccabees v. Johnson, 79 Okl. 77, 185 P. 82; Hartford Fire Ins. Co. v. Smith, 141 Okl. 90, 284 P. 624, 628. It is said that the doctrine of waiver, as ordinarily asserted to relieve against enforcement of forfeitures contained in insurance policies is only another name for equitable estoppel. Insurance Co. v. Wolff, 95 U.S. 326, 24 L.Ed. 387; Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898; Continental Ins. Co. of New York v. Portwood, 184 Okl. 22, 84 P.2d 435.

The autopsy, which it is urged operates to forfeit the claim for benefits

under this policy, was performed by a disinterested physician under the auspices of a hospital interested only in the scientific cause of death, and in the hope that it might be of some benefit to society. It was not performed at the instance of the beneficiary for the purpose of using its findings to support a claim for benefits under the policy—she merely gave her consent thereto while acting under the impression that the insurer had also consented. Indeed, the ultimate findings were unfavorable to the cause of the beneficiary. The deposition of the physician who performed the autopsy was taken by the appellee and relied upon to support its contention that death did not result from a cause within the coverage of the policy, and the report of the autopsy was admitted in evidence by stipulation and referred to by both parties in the trial of the case. The insurer suffered no detriment or disadvantage, rather it was aided by the findings and conclusions contained in the report. There is nothing to support a forfeiture but the literal words of the policy, and there is competent authority for the application of the doctrine of waiver by estoppel when there is no element of bad faith, and the party insisting upon a forfeiture has suffered no detriment or disadvantage by non-compliance. Loesch v. Union Casualty & Surety Co., 176 Mo. 654, 75 S.W. 621; International Travelers' Ass'n v. Melaun, Tex.Civ.App., 270 S.W. 246; Travelers Ins. Co. v. Welch, 5 Cir., 82 F.2d 799; Gibbs v. United Commercial Travelers, 14 Ohio App. 439. Cf. O'Brion v. Columbian Nat'l. Life Ins. Co., 119 Me. 94, 109 A. 379; Ells v. Order of United Commercial Travelers of America, 20 Cal.2d 290, 125 P.2d 457. A fortiori, the doctrine should have especial application when as here the autopsy was used for the advantage of the party claiming the forfeiture. A forfeiture was allowed under a similar provision relating to notice of an autopsy in Sheehan v. Commercial Travelers Mutual Accident Ass'n, 283 Mass. 543, 186 N.E. 627, 88 A.L.R. 975, but the reasoning there has been criticized as a "drastic, literal application of the clause as a condition precedent." Travelers Ins. Co. v. Welch, supra [82 F.2d 802].

But there are other and additional grounds for the application of waiver by estoppel to the conduct of the insurer in this case. It is a well recognized principle of equitable estoppel that if an insurance company, through those who are authorized to speak for it, either by words or conduct have induced the insured or his beneficiary to refrain from doing that which he otherwise would probably have done in view of the conditions of the policy, it will be estopped from asserting the forfeiture it has so induced to the prejudice of the insured who has given faith to such statements or reasonable deductions from such conduct. Insurance Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 841; Liverpool & London & Globe Ins. Co. v. Cargill, 44 Okl. 735, 145 P. 1134; Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898, 899; Frels v. Little Black Farmers' Mutual Ins. Co., 120 Wis. 590, 98 N.W. 522, 524; Continental Ins. Co. of New York v. Portwood, 184 Okl. 22, 84 P.2d 435. In the view we take of the case, the decisive question is not whether Batis as secretary and treasurer of the Local Lodge has authority, either actual or apparent, to accept or waive any notice or claim required to be given to the proper officials in Ohio as a condition precedent to recovery under the policy—this he clearly could not do. Gannaway v. Standard Accident Ins. Co., 10 Cir., 85 F.2d 144; Massachusetts Protective Ass'n v. Turner, 41 P.2d 689; Modern Woodmen of America v. Weekley, 42 Okl. 25, 139 P. 1138; Travelers' Ins. Co. v. Myers, 62 Ohio St. 529, 57 N.E. 458, 49 L.R.A. 760. Rather the focal point of consideration is whether the secretary of the Local Lodge had authority, either actual or apparent, to act as a medium or channel for the communication of an inquiry concerning a condition precedent in an insurance contract from a local member to the Supreme Council, and to communicate the reply of the Council to the local member.

It was the specific duty of Batis as secretary of the Local Lodge to "discuss and investigate" claims; to assist in the preparation of the same on prescribed forms, and to transmit them to the proper officials for filing in Ohio. For twenty-five years it had been the custom of members of the Local Lodge to "take up with the local secretary all claims" against the insurer and it was the custom of Batis as local secretary to forward the notices of accidents and claims for benefits to the proper officials. Indeed, he accepted the oral notice of the accident in this case and witnessed the written notice and claim which was forwarded to the Supreme Council. In other words, it was his busi-

ness to act as a nexus between the Local Lodge and the Supreme Council, and as such he acted as a channel for the communication of information from the local members to the proper officials in Ohio. If this were in derogation of his authority, the insurer had acquiesced in it too long to complain now. The Secretary had never accepted any information concerning the performance of an autopsy, but none had ever been performed on any member of the Local Lodge during the twenty-five years he had acted as local secretary. He had however habitually accepted notices of equal dignity and importance for communication to the proper officials, and the insurer had acquiesced in this practice.

It should not be forgotten that the object and purpose of a society of this kind is to aid and assist the family and heirs of the deceased brother, and the conduct of the Supreme Council should be construed to effectuate that benevolent purpose. Ells v. Order of United Commercial Travelers of America, 20 Cal.2d 290, 125 P.2d 457. When it became necessary for the son of the insured, who was also a member of the Lodge, to contact the Order on an important matter relating to the insurance contract, it was only natural for him to call the local secretary who constituted the one and only means of contact provided for and existing between the Supreme Council and members of the Local Lodge. He did not ask the secretary to accept any notice provided in the contract or to waive any provisions thereof. He merely asked Batis to act as a means of communication to the proper official in Columbus, Ohio, whom he recognized as having the exclusive authority to consent to the performance of an autopsy. This the secretary agreed to do—he assumed the responsibility and presumed to act, and when he did so, he acted for and on behalf of the insurer. Knights of Phythias v. Withers, 177 U.S. 260, 20 S.Ct. 611, 44 L.Ed. 762; Sovereign Camp W. O. W. v. Chaffer, 217 P. 353; Sovereign Camp v. Pettigrew, 98 Okl. 138, 224 P. 545; Couch on Insurance, Sec. 493. The beneficiary honestly believed that in this manner and by this means of communication she had contacted the proper officials in Ohio, and that they had waived the requirement in the policy relating to notice of an intended autopsy. In these circumstances, "the law will presume that the local secretary performed or should have performed the duty resting upon him and that he transmitted to the association all pertinent information received in line of such duty, and when the agent failed to do so, the knowledge of which he is in possession, but refrained from transmitting to the association, is imputed to the latter" the same as if the member had called the proper official direct and had secured the same reply given him by the local agent. Sovereign Camp, W. O. W., v. Moraida, Tex.Civ.App., 85 S.W. 2d 364, 372.

We conclude that the insurer is estopped to claim a forfeiture under the contract of insurance, and the case is reversed accordingly.