**STADIA OIL & URANIUM COMPANY, a corporation, Ben I. Rankin, Appellants,**

**v.**

**Denson B. WHEELIS, Stanley L. Hough, Mark Lee Kirk, Ada E. Bell, Stanley Marlow, W. John Pangman, Anne Pratt, and Taylor Holmes, Appellees.**

**No. 5633.**

United States Court of Appeals Tenth Circuit.

Dec. 23, 1957.

---

Elias Hansen, Salt Lake City, Utah (W. R. Huntsman, West Jordon, Utah, on the brief), for appellants.

Max Mangum, Salt Lake City, Utah (Rich, Elton & Mangum, Salt Lake City, Utah, on the brief), for appellees.

Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellees, plaintiffs below, recovered judgment upon their claims that the appellants sold them stock in the Stadia Oil & Uranium Company without the registration of that stock with, or the exemption of the stock by, the Securities and Exchange Commission, and that such stock sales were made by use of interstate means of transportation and of the United States mail.

Two substantially identical actions were brought by different plaintiffs. Without objection, they were consoli-

dated for trial.[1] The pleadings and evidence covered a complicated field of stock and corporate transactions involving a number of individuals. The issues presented here concern only the liability of the appellant-defendants Stadia Oil & Uranium Company and Ben I. Rankin[2] to the individual plaintiffs, each of whom recovered judgment against both Stadia and Rankin.

Stadia, a Nevada corporation, was authorized to do business in Utah. At all times pertinent hereto its officers were I. E. Shale as president, Rankin as vice-president, and John T. Collins as secretary-treasurer.[3] The same three men constituted the board of directors. Stadia desired to sell stock to finance its operations. It registered its securities with the Utah State Securities Commission. Although its certificates of stock were admittedly securities within the coverage of the federal Securities Act,[4] Stadia made no effort to register such securities as required by the federal law.

Between June 15 and August 2, 1955, Stadia issued to Austin B. Smith Brokerage Company of Salt Lake City, Utah, its certificates Nos. 17, 18, 19, and 61 covering a total of 95,000 shares of Stadia stock.[5] At the time of the issuance of these certificates Smith paid nothing for them. Later, as stock was sold, new certificates, transferring stock out of the Smith certificates, were issued to the purchasers and Smith accounted to Stadia at the rate of $1 per share less a 12½¢ charge per share retained by Smith. Thus, Stadia received 87½¢ per

share for stock issued out of the Smith certificates.

Certificate No. 21 ws issued to Carl A. Upson of Reno, Nevada, for 10,000 shares. On July 21, 1955, it was delivered to him by Collins. Upson endorsed the certificate and gave it back to Collins. Later, 150 shares out of this certificate were issued to Upson and apparently paid for by him. Upson paid nothing for 9,850 shares covered by the certificate for 10,000 shares.

All stock certificates issued to the plaintiffs cover transfers from either the Smith or the Upson certificates.

James Morrison, a tax consultant living in Los Angeles, California, had known Rankin and Collins prior to the summer of 1955. He had previously done business with Rankin but not with Collins. In the latter part of June, 1955, Morrison met Shale and Collins in Wyoming. Collins told Morrison of a process developed by Shale for making gold out of dirt and for precipitating uranium crystals out of radioactive water. Collins said that Stadia would be the sole licensee of this process. Collins also explained to Morrison the plans for Stadia to develop certain oil and gas leases in the Upheaval Dome District of Southern Utah, and stated that in the course of probing around for a drill site they had come across a thick bed of uranium ore testing 4% to 20% uranium.[6]

Among other statements by Collins to Morrison were these: Stadia was to get out a new stock issue of 50,000 shares at $5 per share. There would be "a

1. Herein appellees will be referred to by name or as plaintiffs.

2. Hereinafter referred to as Stadia and Rankin, respectively.

3. Shale and Collins were both named as defendants. Shale died prior to trial. Collins disappeared after service of process, and a default judgment was entered against him.

4. 15 U.S.C.A. §§ 77a–77aa.

5. Austin B. Smith, who did business as Austin B. Smith Brokerage Company,

was not named as a defendant. It appears from the judgment that the plaintiffs executed a covenant not to sue Smith. The amount of each individual judgment was reduced by the amount of the proportionate share of each plaintiff in the recovery from Smith.

6. At a directors' meeting attended by Rankin and Collins, the issuance of 500,000 shares of stock to Shale was authorized in payment for "certain assets" transferred to the corporation by Shale. The nature of these assets is not disclosed by the record.

spread in Time and Life" in conjunction with the release of this stock. An effort was being made to get clearance from the Securities and Exchange Commission for the new issue. Collins could get Morrison stock at $1 per share from a man in Nevada who did not know about the prospective "big events."

Morrison returned to California and related to the plaintiffs and others what Collins had said about Stadia and its activities. Among such persons were the plaintiff Marlow, who expressed a desire to purchase 2,100 shares of Stadia stock, and plaintiff Pangman, who was interested in buying 1,000 shares of the same stock. Funds to cover these purchases were delivered to Morrison in California. Morrison then went to Reno, Nevada, and met Collins. Morrison was told by Collins not to issue a check in payment of the stock to Stadia because Stadia could not sell stock direct. Collins further said that the stock was being secured from a Nevada resident. The check was made to Collins and the certificates for the stock were later issued as transfers out of the Upson certificate in accordance with a designation contained in a letter written by Morrison to Collins. *At the Reno meeting Collins inquired of Morrison as to whether any other persons might buy stock.

Through the activities of Morrison, other people in California became interested in Stadia stock. In the latter part of July, Morrison went to Salt Lake City and saw Collins who said that he could arrange to get some more stock through the Austin B. Smith Brokerage Company and that he, Collins, would introduce Morrison to Smith. They both went to Smith's office, and Smith stated to Morrison that he would sell some of his Stadia stock. Prior to this trip to Salt Lake City, Morrison had acquired from plaintiffs Bell, Kirk, Holmes,[7] and Hough the funds necessary to purchase Stadia stock for them. At his meeting with Smith, Morrison gave him his check to cover the stock purchases for these plaintiffs and a statement as to how the stock should be issued. In each instance Morrison gave his Los Angeles business address as the address of the individual to whom the stock should be issued.

Plaintiff Pangman purchased a total of 4,000 shares of Stadia stock directly from Smith. Plaintiff Wheelis bought 500 shares in the same manner. These transactions were handled by mail.

Of the 95,000 shares of Stadia stock issued in the name of Smith, a total of 59,800 shares were transferred out and all of these 59,800 shares went to people living in California. Collins, the secretary of the company, knew that this stock was bought by California residents. Smith paid to Stadia $51,143.75 for the 59,800 shares of stock and retained for himself 12½¢ for each share of stock so sold.

■ Defendants insist that the plaintiffs may not maintain this action because they did not make the stock tenders required by the Securities Act.[8] The tenders were made with motions for leave to file amended complaints. Each tender stated that it was made "subject only to the condition that the defendants pay in full any judgment that plaintiffs may acquire in the above litigation." The trial court permitted the amended complaints to be filed and the tendered stock certificates were deposited with the clerk of the court.

The defendants say that the tenders came too late as they were made after the action had been commenced. Section 77l does not say when the tender should be made.[9] Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

---

7. This is true as to the first purchase of Stadia stock by Holmes. Holmes made two other purchases. In each he paid Morrison for the stock in California and the certificates were delivered by mail. The manner in which Morrison handled these two transactions with Stadia or Smith is not disclosed by the record.

8. See 15 U.S.C.A. § 77 l.

9. Cf. Rosenberg v. Hano, 3 Cir., 121 F. 2d 818, 821.

provides that leave to amend "shall be freely given when justice so requires." The granting of permission to file the amended complaints with the accompanying tenders was within the discretion of the trial court.[10] The defendants have not shown how they were prejudiced by this action of the trial court. Clearly there was a proper exercise of discretion.

■ Defendants further object to the tenders because they were conditioned upon payment in full of any judgment that might be recovered. The purpose of a tender is to put the parties in status quo. The plaintiffs who have already paid for the stock do not have to give up the stock before they sue for the return of the purchase money. Defendants have not indicated any prejudice to them by the form of the tenders. The stock is held by the clerk of the court. Any question as to the rights of the defendants to delivery of the stock can be determined by the trial court when it arises.

Defendants argue that the stock transactions with Smith did not contravene the Act because there was an absolute sale of stock in Utah to Smith, a Utah broker, and because transfers of such stock to California residents are exempt from the application of the Act. This naive argument could not appeal even to the most credulous.

■ The officers of the company realized that Stadia stock could not be sold in California. Section 77c(a) (11) exempts from the Act

"Any security which is a part of an issue sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory."

Stadia was incorporated in Nevada and authorized to do business in Utah. It complied with the Utah securities law. Failing to dispose of its stock in Utah, its officers devised the scheme of issuing stock to Smith, a Utah broker, without the payment by Smith of any consideration for the stock. Morrison was then prevailed upon to interest California people in the stock. Upon payment by Morrison to Smith, Smith would remit to Stadia 87½¢ of the $1 per share purchase price and retain 12½¢ for himself. The stock would be issued to the designees of Morrison as stock transferred from the Smith certificates. So far as the Pratt, Bell, Kirk, Hough, and first Holmes transactions were concerned, Morrison collected the purchase money from the buyers in California, traveled to Utah, paid the money to Smith, received the stock certificates, took them back to California, and delivered them to the purchasers.

Section 77e(a) provides:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

So far as pertinent, section 77b(7) defines interstate commerce thus:

"The term 'interstate commerce' means trade or commerce in securities or any transportation or communication relating thereto among the several States * * *."

Section 77d exempts from the application of section 77e:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; * * *

"(2) Brokers' transactions, executed upon customers' orders on any exchange or in the open or counter

---

10. Cf. Smith Contracting Corp. v. Trojan Const. Co., 10 Cir., 192 F.2d 234, 236.

market, but not the solicitation of such orders."

Stadia was an "issuer" as defined in section 77b(4). Smith, at the very least, engaged directly as agent or broker in the business of selling and dealing in securities issued by Stadia and was a "dealer" within the definition of that term in section 77b(12).

Defendants say that the Smith transactions were exempt under section 77d as they were brokers' transactions executed upon customers' orders. This exemption does not apply because Smith was a dealer and his activities constituted dealers' transactions. Stadia, an issuer, cannot escape liability under the Act by having its securities sold through a broker.[11]

Stadia, in the absence of compliance with the Act, could not utilize interstate commerce to sell its securities to the California plaintiffs. With realization of this inhibition, the Stadia officers devised and put into operation a scheme which had for its purpose the accomplishment of the proscribed result. It is an old maxim of the law that a person will not be permitted to do indirectly what he cannot do directly.[12] If a subterfuge, such as that employed by Stadia, is effective to avoid the Securities Act, then that Act which is designed to protect investors [13] fails in its purpose.

The Smith transactions were unlawful under section 77e(a). Without detailing the facts, the dealings between Collins, Upson and Morrison, relating to stock purchased by plaintiffs Marlow and Pangman, fall in the same category. The mail transactions between Smith and the plaintiffs Pangman and Wheelis also violate that section.

Defendant Rankin contends that he is not liable to the plaintiffs because he did not participate in the stock sales to them. Plaintiffs concede that Rankin's liability arises only by reason of the so-called "control" provisions of the Act.[14] The statute does not define the terms "controls," "controlled," or "controlling." These terms should be given a broad definition to permit the applicable provisions of the Act to become effective wherever the fact of control actually exists. This fact is one for determination by the jury and was submitted to the jury under careful instructions which were not objected to by the defendants so far as this issue is concerned. The jury in returning a verdict against Rankin necessarily found that he was liable under the control section of the Act. On appeal we are required only to ascertain whether there is substantial evidence to support the verdict and judgment of the court. A verdict based on such evidence and approved by the trial court is conclusive and will not be disturbed on appeal.[15] On the issue here presented the evidence was sharply conflicting. Rankin was one of the organizers of the company, its vice-presi-

11. Cf. Securities and Exchange Commission v. Chinese Consolidated Benev. Ass'n, 2 Cir., 120 F.2d 738, 741.

12. United States v. Ansani, D.C., 138 F. Supp. 454, 458; 15 C.J.S. Common Law § 14, p. 629.

13. Securities and Exchange Commission v. Ralston Purina Company, 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494; Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168.

14. Section 77o provides:
"Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

15. Magnolia Petroleum Co. v. Howard, 10 Cir., 193 F.2d 269; Dyess v. W. W. Clyde & Co., 10 Cir., 132 F.2d 972; Cochran v. Order of United Commercial Travelers, 10 Cir., 143 F.2d 82, 85.

dent, and one of its three directors. His connection with the stock sales is shown by evidence that he presided over, and participated in, board meetings where the sale and disposition of the company stock was discussed and authorized. As vice-president he signed two of the Smith certificates. He was the one officer of the company who had had business dealings with Morrison prior to 1955. While he flatly denied any knowledge of, or participation in, the stock sales here under consideration, the evidence is such that the jury could reasonably infer that he "controlled the corporation" and had knowledge of the stock sales in question. The jury resolved this factual issue against Rankin. Under the circumstances, the verdict of the jury must stand.

■ Another contention of defendants is that the Stadia acts of which plaintiffs complain were ultra vires and, hence, there can be no liability imposed on the corporation. A corporation cannot escape liability for its wrongful acts on the claim that they were ultra vires.[16]

■ Defendants say that plaintiff Pangman cannot recover because he was a plaintiff in a Utah district court action to enjoin a stockholders meeting called to remove Collins as secretary-treasurer of Stadia. This issue is raised for the first time on appeal and, hence, merits no consideration.[17] Even if estoppel by conduct or ratification is a proper defense under the Securities Act in an action such as this, a point which we do not decide here, there is no evidence before us to sustain such a defense in this case.

■ Defendants say that the verdict and judgment are improper in that they require payment at the rate of $1 per share, whereas the uncontradicted evidence is that Smith withheld 12½¢ per

share and paid Stadia only 87½¢ per share. This is answered by section 77*l* which permits recovery of "the consideration paid for such security with interest thereon." Admittedly the plaintiffs recovered only what they paid plus interest and the costs permitted by the Act.

■ The jury returned verdicts in favor of plaintiffs and against Stadia and Rankin. At the same time the issues between plaintiffs and Morrison were resolved in favor of Morrison. It is argued that these verdicts are inconsistent. There is evidence that Morrison invested heavily in Stadia stock on his own account. The record is such that the jury reasonably could have inferred that Morrison was a victim of the scheme rather than a knowing participant in it. Defendants support their contentions with authorities holding that in certain negligence actions verdicts fixing liability on a servant and exonerating a master are inconsistent. Such rule has no application here. Morrison was not the servant or agent of Stadia, Rankin, Smith, Collins, or Upson. Under the Securities Act, section 77*l*, the liability is several. The liability of Stadia and Rankin does not depend on the liability of Morrison.[18] The verdicts are not inconsistent.

■ Defendants object to the refusal of the trial court to give their requested instructions Nos. 7 and 8. These requested instructions are not set out in the record and under our Rule 16, paragraph 1, 28 U.S.C.A., the matter is not properly before us. However, we have examined the requested instructions as they appear in the defendants' statement of "Points Relied Upon." The requests were properly denied. Indeed, it would have been error for the trial court to have given them.

16. National Bank v. Graham, 100 U.S. 699, 702, 25 L.Ed. 750; 19 C.J.S. Corporations § 1262, p. 948. In Whittaker v. Wall, 8 Cir., 226 F.2d 868, and Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875, both the company and its agent were held liable for violations of the Securities Act.

17. Dubuque Fire & Marine Ins. Co. v. Caylor, 10 Cir., 249 F.2d 162; Justheim Petroleum Co. v. Hammond, 10 Cir., 227 F.2d 629, 633.

18. See Restatement of the Law, Torts, Vol. 4, § 883, pp. 454–457.

Section 77k(e) authorizes a court to tax as costs reasonable expenses, including reasonable attorney fees, "if the court believes the suit or the defense to have been without merit." The trial court found that the defense on behalf of Stadia was without merit and was not interposed in good faith. Costs in the amount of $5,500 were assessed against Stadia. Stadia complains of this action taken against it. Under section 77k(e), the matter is within the discretion of the trial court. The finding by the trial court that Stadia's defense was without merit and was not interposed in good faith is imperatively required by the record. There was no abuse of discretion.

The other contentions of the defendants have been considered. They are all so obviously lacking in merit as to deserve no mention herein. The judgment is affirmed.